IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RONALD PONTON, SR., Individually, RONALD PONTON, dba MEXICO MOVING COMPANY, and TOMIKA PONTON, *on behalf of themselves and others similarly situated*, | Case No.: |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v | |
| JPMORGAN CHASE & CO. and JPMORGAN CHASE BANK, N.A. | **(JURY TRIAL DEMAND)** |
| Defendants. | |

COMES NOW Plaintiffs Ronald Ponton, Sr, Tomika Ponton, and Ronald Ponton, dba Mexico Moving Company ("MMC") (The Pontons and MMC will be collectively called the "Plaintiffs" or the "Pontons") complaining of Defendants, and allege and say:

## INTRODUCTION

## ILLEGAL GARNISHMENT

1.     This lawsuit is about JPMorgan Chase's unfair and deceptive practices in the area of bank account garnishments that persisted even after the CFPB Consent Order became public against another regulated institution on May 4, 2022.

2.     JPMorgan Chase engaged in unfair acts and practices by responding to and processing garnishment notices against out-of-state bank accounts in violation of certain garnishment-issuing states' prohibitions against out-of-state garnishment.

COMPLAINT 1

3. JPMorgan Chase engaged in unfair acts and practices by failing to apply the appropriate state exemptions to certain consumers' deposit accounts after receiving garnishment notices.

4. JPMorgan Chase engaged in deceptive acts and practices by misrepresenting to consumers, by implication, the applicable state exemption rights for garnishment by applying the issuing state's exemptions, instead of the exemptions of the consumer's state of residence, where the states of issuance and residence differ.

5. JPMorgan Chase engaged in unfair acts and practices by using a deposit agreement that required consumers to direct JPMorgan Chase not to contest legal process and waive JPMorgan Chase's liability for its unlawful garnishment conduct; and

6. JPMorgan Chase engaged in deceptive acts and practices by suggesting consumers could not bring legal claims for misrepresenting consumers' legal rights against JPMorgan Chase regarding garnishment proceedings in violation of Sections 1031(a) and 1036(a)(1)(B) of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a) and 5536(a)(1)(B). JPMorgan Chase's duty to the Pontons arises out of the CFPA.

7. On June 22, 2023, the SEC issued a cease and desist order against JPMorgan Chase because "47 million records of communications of JPMorgan employees in the Chase banking retail group, thousands of whom were registered representatives of JPMorgan, are unrecoverable." According to JPMorgan Chase; beginning in 2016, JPMorgan Chase undertook a project to delete from its system older communications and documents no longer required to be retained. The deletion tasks implemented by employees in connection with the project experienced glitches, with the identified documents not, in fact, being expunged. In June 2019, while troubleshooting the issue, JPMorgan Chase deleted 47 million records.

COMPLAINT 2

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

8.      On December 17, 2021, JPMorgan Chase admitted to widespread recordkeeping failures and agreed to pay a $125 million penalty.

9.      On January 16, 2024, JPMorgan Chase had to pay $18 Million for violating the federal Whistleblower Protection Rule. JPMorgan Chase was found to be impeding customers from reporting violations to the government.

10.     Unlicensed debt collectors like Green & Norwood of Seattle, Washington are only able to engage in abusive practices in attempts to collect questionable accounts because companies like JPMorgan Chase are complicit in and facilitate their illegal activities. In the nearly year-long process it took to recover their funds from JPMorgan Chase, the Plaintiffs suffered harm and paid unnecessary credit card interest.

## **THE PARTIES**

11.     Plaintiff Ronald Ponton Sr. is an individual and a resident of Alabama. Plaintiff Tomika Ponton is an individual and a resident of Alabama.

12.     Plaintiff Ronald Ponton dba Mexico Moving Company ("MMC") is a sole proprietorship with a principal office in Alabama.

13.     The Pontons and MMC are "Consumers" covered under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") (Tex. Bus. & Com. Code § 17.45(4))  as they are individuals with a small business of assets under 25 million dollars who purchased banking account services from the Defendants in exchange for monthly fees and/or the Defendants' use of their funds for interest income.

14.     JPMorgan Chase & Co. is a Delaware corporation. The location of the Principal Office as stated in the 2023 Prospectus filed with the United States Securities Exchange Commission (SEC) is 277 Park Avenue, New York, New York 10172-10003. The location of the principal executive office is 383 Madison Avenue, New York, New York 10179. When referred

COMPLAINT 3

to by itself, JPMorgan Chase & Co. will be individually referred to in this complaint as "JPMorgan Chase."

15.     JPMorgan Chase is a "Person" under Section 17.45(3) of the DTPA.

16.     JPMorgan Chase Bank, N.A., is a national association with OCC Charter Number 8 ("Chase Bank"). Chase Bank lists Columbus, Ohio as its principal office on its charter.

17.     Chase Bank is a "Person" under Section 17.45(3) of the DTPA.

18.     Based on JPMorgan Chase's legal filings, the company, along with its divisions and subsidiaries, is operated as one united organization, and financial statements are consolidated and reported as one entity among its various subsidiaries. The defendants will collectively be referred to in this complaint as "Chase".

## JURISDICTION

19.     The Plaintiffs have opted out of arbitration and opted out of the class action representation restrictions as explicitly provided for under the then-governing deposit account agreement.

20.     Venue is proper in Washington because the events that caused the Plaintiffs' harm occurred in this jurisdiction. Washington has a substantial connection to the Plaintiffs' claims. This Court also has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

21.     Jurisdiction is proper because the Parties are citizens of different states (no defendant is a resident of Alabama) and the amount in controversy exceeds $75,000, exclusive of interests and costs, and thus the court has diversity jurisdiction subject to 28 U.S.C. §1332.

## PUBLIC INTEREST

COMPLAINT 4

22.     The Pontons allege that Chase is engaging in, has engaged in, or is about to engage in the unlawful acts or practices set forth below; that Chase has, by means of these unlawful acts and practices, caused damage to, or acquired money or property from the Pontons and the class members; and that Chase has adversely affected the lawful conduct of trade and commerce, thereby directly or indirectly affecting the Pontons and members of the class. Therefore, the Pontons and class members are of the opinion that these proceedings are in the public interest.

## TRADE OR COMMERCE

23.     Chase has, at all times described below, engaged in conduct that constitutes "trade" and "commerce" as those terms are defined by § 17.45(6) of the DTPA.

## NOTICE BEFORE SUIT

24.     The Pontons informed Chase generally of the alleged unlawful conduct described below, at least sixty (60) days before filing suit, as required by § 17.505(a) of the DTPA.

25.     The Pontons requested that Chase agree to a litigation hold prior to litigation and Chase would not agree to place a litigation hold.

## THE CONSENT ORDER

26.     On May 4, 2022, the CFPB issued a consent order with another large financial institution by regulatory standards ("Regulated Institution") subject to the same exact regulatory guidelines as Chase (the "Consent Order"). The CFPB expressly stated that it applies the same regulatory scheme to institutions under its supervision in the same size category.

27.     The CFPB's website disclosed that it examined its largest financial institution during the COVID crisis for compliance with its garnishment requirements. Upon information belief, Chase is the largest financial institution regulated by the CFPB.

28.     The CFPB reviewed the garnishment-related practices of the Regulated Institution and identified the following law violations: (1) Regulated Institution engaged in unfair acts and practices by responding to and processing garnishment notices against out-of-state bank accounts in violation of certain garnishment-issuing states' prohibitions against out-

COMPLAINT 5

of-state garnishment; (2) Regulated Institution engaged in unfair acts and practices by failing to apply the appropriate state exemptions to certain consumers' deposit accounts after receiving garnishment notices; (3) Regulated Institution engaged in deceptive acts and practices by misrepresenting to consumers, by implication, the applicable state exemption rights for garnishment by applying the issuing state's exemptions instead of the exemptions of the consumer's state of residence, where the states of issuance and residence differ; (4) Regulated Institution engaged in unfair acts and practices by using a deposit agreement that required consumers to direct Regulated Institution not to contest legal process and waive Regulated Institution's liability for its unlawful garnishment conduct; and (5) Regulated Institution engaged in deceptive acts and practices by suggesting consumers could not bring legal claims misrepresenting consumers' legal rights against Regulated Institution regarding garnishment proceedings, all in violation of Sections 1031(a) and 1036(a)(1)(B) of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a) and 5536(a)(1)(B). Under Sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565.

29.     Chase has engaged in all of the practices outlined in paragraph 23 as unlawful for regulated financial institutions by the CFPB.

## **FACTUAL STATEMENT**

30.     The paragraphs enumerated above and below are incorporated by reference.

31.     Ronald and Tomika Ponton were Alabama residents at all relevant times.

32.     The Pontons opened a small business account ending in 8783 in Texas with a small business banker in or around 2012.

33.     The Pontons opened a personal savings account ending in 8883 in Texas and a personal checking account ending in 2951 in Illinois.

34.     The Deposit Agreement that governed the account at the time of the garnishment had the name of JPMorgan Chase as the owner at the bottom of the agreement.

COMPLAINT 6

35.    Prior to 2009, Ronald Ponton and Tomika Ponton were victims of fraud by LLS America, LLC ("LLS America"). They filed a proof of claim in a bankruptcy by LLS America in the Eastern District of Washington (Spokane).

36.    LLS America trustee, Bruce Kriegman then filed adversary actions against the Pontons claiming they were net winners in an alleged Ponzi scheme and obtained a default judgment against them in the Eastern District of Washington in 2015 while they were missionaries in Mexico.

37.    Trustee Kriegman, a Seattle resident, then took the judgment he obtained in federal court in Spokane County, Washington, and filed it as a foreign judgment in state court in Seattle in King County, Washington against Mobile, Alabama residents Ronald Ponton and Tomika Ponton.

38.    On February 10, 2022, Kriegman filed an Application for a Writ of Garnishment with the Clerk of the Superior Court of Washington for King County in the amount of $120,670.59. The Application had the caption Bruce Kriegman, solely in his capacity as court-appointed Chapter 11 Trustee for LLS America, LLC, Judgment Creditor, v. Ronald Ponton, Jr. and Tomika Ponton, Judgment Debtors, v. JPMorgan Chase Bank, N.A., Garnishee.

39.    On February 11, 2022, Kriegman, through his attorneys Green & Norwood PLLC, mailed the Writ of Garnishment to Chase in Monroe, Louisiana along with a check for $20.00 to cover a processing fee. The writ was mistakenly written for Ronald Ponton Jr not Sr and Tomika Ponton.

40.    The Writ had a specific form of Answer that Chase was instructed to complete and send to the court, the defendant, and Kriegman.

41.    On February 22, 2022, Chase placed a hold on three of the Ponton's accounts, two personal accounts, and one business account as follows:

COMPLAINT 7

| Account Number | Amount of Hold | Present Balance |
| --- | --- | --- |
| 8783 | 55596.67 | 55596.67 |
| 8883 | 2250.70 | 2250.70 |
| 2951 | 601.51 | 601.51 |

42.    On February 22, 2022, Chase mailed a letter to the Pontons telling them that federal or state law required them to immediately place a hold on their Chase Bank accounts when no law that governed their accounts required a hold to be placed on their accounts.

43.    The Pontons received the letter from Chase notifying them about the garnishment along with the garnishment documents on or about February 28, 2022. It was not until that date that the Pontons realized what exactly had happened.

44.    That letter provided that the funds would be held until the expiration date of the hold, if there was one, or the funds were sent to the issuer.

45.    Chase mailed its answer to the Writ on or around March 2, 2022, based on the postmark. Chase did not use the specific form of answer that was requested by the Writ.

46.    Chase told the court that it had three accounts of the Pontons with funds totaling $58,448.87.

47.    As Alabama residents, the Pontons were entitled to a $7500 exemption from garnishment. Chase Bank granted the Pontons the $500 exemption entitled to Washington state residents.

48.    The Pontons operate a small business that involves moving people's belongings that are relocating into or out of Central America. Customers regularly access the Chase Bank MMC small business account. MMC requires a 30 percent deposit into 8783 at the time of contract, a 60 percent deposit upon pickup of the goods, and 10 percent upon delivery.

COMPLAINT 8

49.    Chase was well aware of this arrangement as it explicitly opened the account understanding the nature of the Pontons' small business. Chase discussed at length MMC's relationship with its customers. Chase knew that denying MMC's customers and the Pontons access to the clients' funds would damage the Plaintiffs' relationships with MMC's customers.

50.    A person who is employed could hope for a new paycheck in the next two weeks. The Pontons being self-employed and their business and personal accounts being harmed left them with damages.

51.    On the day Chase Bank froze the Pontons account, the Pontons' clients had deposited $14,881.36 in funds in the MMC account. Chase Bank left the Pontons in a desperate situation, unable to return client funds and unable to fulfill obligations to their clients under contract.

52.    Upon information and belief, Chase Bank has ongoing examinations by the CFPB, and Chase was fully informed of the requirements set forth for garnishments by the regulatory agencies including being under a previous Matters Requiring Attention.

53.    When the Plaintiffs' funds were frozen, they requested a release from Chase and no relief came. The Plaintiffs then tried to obtain an attorney in Washington. They tried to obtain an attorney with legal aid in Washington state and they could not get an attorney because they were not Washington state residents.

54.    The Plaintiffs tried to obtain an attorney in Alabama but they could not find nor afford an Alabama attorney to litigate in the state of Washington. They tried Alabama legal aid but Alabama pro bono attorneys only work within the state of Alabama.

55.    The Plaintiffs were told by the Washington state attorneys to try to file bankruptcy. The Plaintiffs tried to file bankruptcy in Alabama; however, the Plaintiffs were told that they were not qualified to file bankruptcy and the Alabama attorney would not proceed with a bankruptcy.

COMPLAINT 9

56.     Eventually, the Plaintiffs only found New York attorneys who were willing to help the Plaintiffs. The New York attorney contracted with a Washington State local counsel.

57.     The Plaintiffs incurred tens of thousands in unnecessary legal fees paid on their credit cards. The Plaintiffs paid high interest rates. Chase did not release the Plaintiffs' funds of $58,448.87 until December 2022.

58.     Chase had a duty to amend its Answer to the writ of garnishment in the Pontons' case even if it made an error in the initial Answer. Chase has a practice of amending garnishment answers for its own benefit.

COMPLAINT 10

## CLASS ACTION ALLEGATIONS

59.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this

action as a class action on behalf of themselves and the following Classed of similarly situated

individuals: **Texas Class**

> All Chase deposit account customers who are individuals or small businesses with assets of less than $25 million who have incurred legal processing fees, overdraft fees, and/or insufficient funds fees to Chase resulting from the garnishment of the customers' Chase deposit accounts while living in a different state from the place of the garnishment's issuance, where issuing state was a Restricted State (as defined in Consent Order), and were sent a letter or other communication notifying them that Chase was required by federal or state law to immediately place a hold on their Chase deposit accounts that were located in Texas from two years prior to the filing of this lawsuit. This is based on Texas DTPA law because the Chase contract requires Texas law and venue.

> **Illinois Class**:  All Chase deposit account customers who are individuals or small businesses with assets of less than $25 million who have incurred legal processing fees, overdraft fees, and/or insufficient funds fees to Chase resulting from a garnishment of the customers' Chase deposit accounts while living in a different state from the place of the garnishment's issuance, where issuing state was a Restricted State, and were sent a letter or other communication notifying them that Chase was required by federal or state law to immediately place a hold on their Chase deposit accounts that were located in Illinois from two years prior to the filing of this lawsuit. This is based on Texas DTPA law because the Chase contract requires Texas law and venue.

> **Nationwide Class**: All Chase deposit account customers who are individuals or small businesses with assets of less than $25 million where Chase received a garnishment notice of a Chase deposit account while residence in a different state from the place of the garnishment's issuance and applied an exemption from the issuing state instead of their account of residence when the exemption of the state of residence was greater than that the issuing state to Chase from two years prior to the filing of this lawsuit. This is based on Texas DTPA law because the Chase contract requires Texas law and venue.

60.    Excluded as members of the DTPA Class are any persons who fall within these

definitions if the person  (i) is an employee or independent contractor of any of the Defendants;

(ii) a relative of an employee or independent contractor of any of the Defendants; (iii) is an

employee of the Court where this action is pending or (iv) has previously released the

Defendants for the claims asserted in this action.

COMPLAINT 11

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

61.     While the exact number of Class members can only be determined through appropriate discovery, Plaintiffs believe that there are thousands of members of the Class.

62.     Plaintiffs' claims are typical of the claims of the other members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct, as complained of herein.

63.     There are common questions of law and fact affecting members of the Class, which common questions predominate over questions that might affect individual members. These questions include, but are not limited to, the following:

Whether the Defendants have charged the members of the class legal processing fees, overdraft fees and/or insufficient funds fees from the garnishment;

Whether the Defendants have used false, deceptive, or misleading statements in their Deposit Agreements with the Plaintiffs and other members of the class, specifically stating that Chase does not have to determine if any legal process is validly issued or enforceable;

Whether the Defendants communicated with the Plaintiffs and other members of the class,

Whether Plaintiffs and the other members of the Class are entitled to damages, including costs, and/or attorneys' fees, for Defendants' acts and conduct as alleged herein, and the proper measure thereof.

64.     Plaintiffs propose to represent themselves and the DPTA Class and Breach of Contract Class as defined above. Subclass(es) may also be added as these proceedings continue.

65.     Plaintiffs will fairly and adequately represent the other members of the Class. Plaintiffs have no interests that conflict with the interests of other Class members. Plaintiffs have retained counsel competent and experienced in the prosecution of class action litigation.

66.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

COMPLAINT 12

1    the damages suffered by individual Class members might be relatively small, the expense and

2    burden of individual litigation make it impossible for members of the Class to redress

3    individually the wrongs done to them. There will be no difficulty in the management of this

4    action as a class action.

5          67.    Members of the Class can be identified from records maintained by Defendants,

6    and can be notified of the pendency of this action by United States mail using a form of notice

7    customarily used in similar class actions.

8          68.    The Class definitions may be amended or modified.

9          69.    Class certification, therefore, is appropriate under FED. R. CIV. P. 23(b)(3)

10   because the above common questions of law or fact predominate over any questions affecting

11   individual Class Members, and a class action is superior to other available methods for the fair

12   and efficient adjudication of this controversy.

13         70.    Class certification also is appropriate under FED. R. CIV. P. 23(b)(2) because

14   Chase has acted or refused to act on grounds generally applicable to the Class, thereby making

15   final injunctive relief appropriate with respect to the Class as a whole.

16         71.    Class certification also is appropriate under FED. R. CIV. P. 23(b)(1) because

17   the prosecution of separate actions by individual Class Members would create a risk of

18   establishing incompatible standards of conduct for Chase.  For example, one court might decide

19   that the challenged actions are illegal and enjoin Chase while another court might decide the

20   same actions, inaction and/or omissions are not illegal.  Individual actions also could be

21   dispositive of, impair or impede the interests of Class Members who are not parties to such

22   actions.

23         72.    Absent a class action, Chase will escape liability for its wrongdoing despite its

24   serious violations of the law and the infliction of economic damages and other actual harm on

25   Plaintiff and Class Members.

26

COMPLAINT 13

**SEATTLE CONSUMER JUSTICE**
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

73.     While the exact number of Class members can only be determined through appropriate discovery, Plaintiffs believe that there are thousands of members of the Class.

74.     Plaintiffs' claims are typical of the claims of the other members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct, as complained of herein. All of the claims below under the DTPA are class claims.

## LEGAL CLAIMS

**FIRST CLAIM FOR RELIEF**
**(The Texas Deceptive Trade Practices Act ("DTPA")) (the Pontons, the Texas Class and the Nationwide Class)**

75.     The foregoing and following paragraphs are incorporated by reference.

76.     Plaintiffs and Class Members are "consumers" under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Section 17.50 and 17.50(a)(3) and under Section 17.45(4) of the Texas Business and Commerce Code, by purchasing deposit account services for money or the use of funds on deposit interest. JPMorgan Chase and Chase Bank are "persons" that may be sued under the DTPA, under Section 17.45(3) of the Texas Business and Commerce Code, for providing such services.

77.     Chase, as alleged above, has in the course of trade or commerce engaged in false, misleading, and deceptive acts and practices declared unlawful, in § 17.46(a) and (b) of the DTPA as follows:

    a.  Engaging in false, misleading, or deceptive acts or practices in the conduct of trade or commerce in violation of DTPA § 17.46(a);

    b.  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses benefits, or quantities that they do not have in violation of DTPA § 17.46(b)(5);

COMPLAINT 14

c.  Representing that an agreement confers or involves rights, remedies, or obligations which it does not have in violation of DTPA § 17.46(b)(12); and

d.  Failing to disclose information concerning services which were known at the time of the transaction if such failure to disclose information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed, in violation of DTPA § 17.46(b)(24).

78.  The Plaintiffs and members of the class maintain deposit accounts, for either or both checking and savings with Chase and they paid Chase a monthly fee for those banking services or allowed Chase use of their funds on deposit for interest income in exchange for the deposit accounts.

79.  Chase knew that the Plaintiffs and class members were residents of a state different from the issuing state of the writ of garnishment.

80.  Chase knew that by law, the plaintiffs' and class member deposit accounts were located in a different state because the Plaintiffs were Alabama residents under Washington State law, the issuing state of the Writ.

81.  Chase knew that, by contract, the Plaintiffs' savings account and other such accounts were legally located in Texas. MMC's account was located in Texas and the checking account was located in Illinois.

82.  Chase froze the Plaintiffs' bank accounts knowing the Plaintiffs had no bank accounts in the state of Washington that were under the jurisdiction of the King County Court. Upon and information and belief, this happened to other customers nationwide.

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

83.    Chase charged the Plaintiffs legal processing fees, overdraft fees and/or insufficient funds fees from the garnishment. Upon and information and belief, this happened to other customers nationwide.

84.    In the Deposit Agreement, Chase specifically states that it does not have to determine if any legal process is validly issued or enforceable. Yet Chase told the Plaintiffs that the garnishment was valid even though it was not. Upon and information and belief, this happened to other customers nationwide.

85.    The Plaintiffs relied on Chase's response and did not file a request for the $7500 exemption again and borrowed more money to survive. Upon and information and belief, this happened to other customers nationwide.

86.    Chase provides it will have no liability for these actions no matter what it does. That is not permitted by the CFPA and the Texas code of law.

87.    Chase Bank knew from the CFPB that these acts were in violation of the Consumer Financial Protection Act. In fact the CFPB specifically found that it was a violation of Sections 1031(a) and 1036(a)(1)(B) of the Consumer Financial Protection Act to require a consumer to waive a bank's liability for its unlawful garnishment conduct in a Deposit Account Agreement.

88.    Chase's actions were intentional as it was informed of the law in advance yet it still proceeded with the garnishment and misrepresentations.

89.    Chase thwarted the objectives of the Alabama exemption statutes by accomplishing informally and indirectly what it is explicitly prevented from doing formally and directly. The policy underlying the application of the state's exemption statutes is to ensure that regardless of the debtor's improvidence, the debtor and his or her family will retain enough money to maintain a basic standard of living, so that the debtor may have a fair chance to

COMPLAINT 16

remain a productive member of the community and not have to seek state financial assistance. Permitting a bank to apply the state of issuance's exemption statute governing exemptions to a foreigner would defeat the legislative policy underlying that exemption.

90.     The DTPA provides that false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are  unlawful. Tex. Bus. & Com. Code § 17.46.

91.     Chase violated Tex. Bus. & Com. Code § 17.46 by complying with a Washington State garnishment statute improvidently issued when the issuing state defined the Pontons' accounts as located within the state of Alabama, by freezing funds in excess of the exemption permitted by the state of Alabama, by telling the Plaintiffs that the Writ was valid, by refusing to release the funds when it knew the Plaintiffs would experience financial harm without the bare minimum to live on.

92.     Chase knew that the Plaintiffs would experience harm from its actions. Chase was only concerned about its own interests which included fee income and use of Plaintiffs' funds for investment purposes for nearly a year while the Plaintiffs had no use of the funds.

93.     A draft of this lawsuit along with a demand letter was submitted to Chase in compliance with the  60-day warning notice to Chase of a DTPA claim by the Plaintiffs.   treble damages, costs, and attorney fees for Chase's unfair and deceptive trade practices.

94.     Plaintiff and Texas Class Members, therefore, are entitled to injunctive relief and/or compensation for their economic damages and other actual harm, under Section 17.50 of the Texas Business and Commerce Code, including treble damages, costs and attorney fees for Chase's unfair and deceptive trade practices.

**SECOND CLAIM FOR RELIEF**
**(TORTIOUS INTERFERENCE – MMC, Nationwide, Texas, Illinois)**

95.     The foregoing and following Paragraphs are incorporated by reference.

COMPLAINT 17

96.    As described *supra*, the Defendant has tortiously interfered with the Plaintiffs' business relationships by unlawfully interfering with their existing business relationships.

97.    The Defendants' actions of interfering with Plaintiffs' existing and prospective business relations were intentional and wrongful. Chase deceived the Plaintiffs telling them the garnishment was valid so the Plaintiffs would not be inclined to fight the illegal garnishment.

98.    Chase knew its financial power and level of trust as a federally regulated institution would influence the Plaintiffs.

99.    As a proximate result of the Defendants' acts of interference, Plaintiffs have suffered damages to their business. By way of example, the process of opening, attempting to open, and moving the numerous accounts is laborious and expensive. Further, the interference with banking relations has caused the Plaintiffs to lose customers who rely on the Plaintiffs' banking account to assist with obtaining international moving services.

100.    Section 4.103(a) of the Texas Business and Commerce Code provides that the effect of the provisions of this chapter may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure. Therefore; Chase cannot claim that the Pontons waive consequential and punitive damages for Chase's acts that constitute unfair trade practices, tortious interference, gross negligence or willful misconduct.

101.    The Defendant's tortious interference was done with malice for which the law allows imposition of exemplary and punitive damages.

**THIRD CLAIM FOR RELIEF**
**(Gross Negligence – Nationwide, Texas, Illinois)**

102.    The foregoing and following Paragraphs are incorporated by reference.

COMPLAINT 18

103.    Defendants duty to the Pontons arises out of law not out of contract specifically the CFPA Sections 1031(a) and 1036(a)(1)(B).

104.    Green & Norwood misused the garnishment process to harass and cause harm to the Pontons by filing a proceeding in King County when they knew it was an improper venue and the Pontons had no assets in King County for the malicious purpose that the Pontons would not be able to defend themselves or that it would be financially untenable for them to defend themselves in a distant garnishment proceeding.

105.    At the time of the filing of Chase's answer, if Chase were not complicit, the case would have finally ended in March, 2022 upon the Court realizing that the Pontons' bank accounts were not located in Washington.

106.    Defendants actions placed Kriegman in a position of power over the Plaintiffs.

107.    Moreover, Chase could not use the court order as a basis to continue to hold the funds because the court had ordered the continued hold only because of Chase's false answer indicating funds were in Washington state.

108.    Indeed, Chase could have held its own funds in place of the Plaintiffs' funds or at least released the Alabama statutory exemption, to avoid further damage to the Plaintiffs.

109.    The Pontons and other consumers suffered financial and economic damages due to the Defendants' misconduct and policy.

110.    The Defendants are liable for the above damages, including special and punitive damages for Defendants' willful misconduct.

**FOURTH CLAIM FOR RELIEF**
**(In the Alternative – Willful Misconduct – Texas, Illinois, and Nationwide)**

111.    The foregoing and following paragraphs are incorporated by reference.

COMPLAINT 19

112.    At any point after the May 2022 order was published, Chase's actions were no longer sustainable as negligent or grossly negligent. Not only did Chase know the law without question on this date but it knew that the Pontons had read the laws as the Consent Order had been provided to Chase.

113.    This cannot be an error or mistake because when alerted of the situation, Chase intentionally and maliciously aided Green & Norwood in its continued pursuit of an illegal garnishment of the Plaintiffs.

114.    The CFPB said a company typically responds in 15 days yet in 30 days Chase still had not responded to the Plaintiffs.

115.    When Chase finally responded, it wrote "We enforced a valid garnishment and court order for your accounts." Chase deceived the CFPB in the response that it gave because the Writ was not valid. Due to Chase's actions, it took many months to prove the garnishment was invalid.

116.    Chase also wrote "Our agreement with you is that if we receive any legal process relating to you or your account, you authorize us to comply with it." This is after the Pontons explained the harm they suffered and after Chase had a copy of the CFPB Consent Order knowing that it was the regulatory position that it was an unfair practice to make consumers authorize a federally regulated financial institution to comply with an illegal garnishment.

117.    Additionally, the Deposit Agreement specifically states that Chase must always act reasonably and in good faith and the Pontons did not authorize Chase to comply with the illegal garnishment because such actions were not reasonable and in good faith.

118.    The Pontons and other consumers suffered damages due to Defendants' misconduct and policy. Defendants are liable for actual and punitive damages under Texas law for Defendants' intentional conduct and policy applicable to certain consumers.

COMPLAINT 20

119.    The Pontons suffered actual damages in the form of attorney fees, and request punitive damages for Chase's malicious and wanton actions.

**FIFTH CLAIM FOR RELIEF**
**(Breach of Contract – Nationwide, Texas, Illinois)**

120.    The foregoing and following paragraphs are incorporated by reference.

121.    The Plaintiffs entered into contracts with the Defendants regarding the accounts held with the Chase Bank. Each of the accounts opened by the Plaintiffs is governed by a Deposit Account Agreement. At issue in this case are three separate accounts. On information and belief, the Deposit Account Agreements for each of the accounts at issue is identical or substantially similar.

122.    The Deposit Account Agreements specify that account holders, such as the Plaintiffs, "may withdraw funds the next business day after the day in which the funds are deposited." The Chase Funds Availability Policy further specifies that "Wire transfers, electronic direct deposits and cash deposits will be available on the day we receive your deposit. Except as described later in this policy, when you make other deposits, the funds are available on the first business day after the day we receive your deposit."

123.    It also provides; "Once funds are available, you may withdraw them or use them to pay checks and other items." All of the funds held with Defendant Chase at the time Chase froze the funds in the Plaintiffs' accounts had been properly deposited with Chase, and were available for withdrawal pursuant to the Funds Availability Policy. Therefore, all of the funds in the relevant accounts should have been available for immediate withdrawal by the Plaintiffs.

124.    The Deposit Account Agreement allows Chase to place a hold on customer accounts for legal proceedings. However, the agreement also provides "Any provision of this

COMPLAINT 21

agreement that limits the bank's liability does not negate the bank's duty (if any) under applicable law to act in good faith and with reasonable care."

125.    Prior to the garnishment, Chase has been examined by its regulators, the Office of the Comptroller of the Currency and the Consumer Financial Protection Bureau. According to the CFPB, for the largest and most complex banks in the country, the agency has implemented a year-round supervision program.

126.    Chase being a large and complex bank, was informed by the CFPB of its interpretation of the CFPA. Upon information and belief Chase was informed by the CFPB that failing to check the issuing state's rules on garnishment is an unfair and deceptive trade practice under the CFPA during its pandemic bank account garnishment reviews. Upon information and belief Chase was informed by the CFPB that failing to apply the state of residence's exemptions on garnishment is an unfair and deceptive trade practice under the CFPA.

127.    There is no reasonable basis for Chase to believe that a court in Kings County, Washington would have the authority to order the garnishment of funds located within the state of Alabama from Alabama citizens after being specifically told otherwise.

128.    There is no reasonable basis for Chase that Alabama wants its citizens to be governed by another state's exemption. Alabama has to provide social services to its citizens and therefore; is the only state that can tell which exemption applies to its citizens under these circumstances.

129.    Chase has a plethora of attorneys who set up compliance programs and review legal matters. Chase understands the issue of jurisdiction because it has filed many motions on that issue. Chase told the Plaintiffs that the Writ was reviewed by its legal department.

COMPLAINT 22

130.    Chase owes the Plaintiffs a duty of good faith as a part of its contracts with them. At a minimum, good faith means honesty in fact and the observance of reasonable commercial standards of fair dealing.

131.    Chase contemplated that failure to give access to all of the funds in a person's or business' bank accounts except another state's exemptions which are lower than the resident state would cause severe mental anguish at the time of the contract formation.

132.    Chase had access to the Plaintiffs' funds for its full investment purposes while the Plaintiffs' did not.

133.    Chase has breached its contracts with the Plaintiffs by failing to deliver available funds to them upon demand. When Chase froze the funds in the accounts, the funds therein were not available for immediate distribution to the account holders pursuant to the Deposit Agreement and its Funds Availability Policy. The Deposit Agreement provides no reasonable basis for placing a hold on the Plaintiffs' funds without providing the Alabama state exemption. Further, even if the Deposit Agreement were to provide for a hold on all the funds at the time except $500, such hold as employed by Chase in this matter was beyond any reasonable time or commercial standards of fair dealing.

134.    The Plaintiffs are entitled to recover their actual damages and costs. For the accounts governed by Texas law, the Plaintiffs also are entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code chapter 38 because this is a claim for breach of a written contract.

**SIXTH CLAIM FOR RELIEF**
**(Illinois Code Chapter 815, 510/1 through 510/7, Uniform Deceptive Trade Practices Act ("UDTPA") (the Illinois Class)**

135.    Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

COMPLAINT 23

136.    Plaintiffs and Class Members are "consumers" under the Illinois Unfair and Deceptive Trade Practices- Act ("UDTPA"), under Chapter 815, Section 510 of the Illinois Code, by purchasing deposit account services for money or the use of funds on deposit interest. JPMorgan Chase and Chase Bank are "persons" that may be sued under the UDTPA, for providing such services.

137.    Chase, as alleged above, has in the course of trade or commerce engaged in false, misleading, and deceptive acts and practices declared unlawful, in § 510 of the UDTPA as follows:

138.    Engaging in false, misleading, or deceptive acts or practices in the conduct of trade or commerce in violation of the UDTPA;

139.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses benefits, or quantities that they do not have in violation of UDTPA;

140.    Representing that an agreement confers or involves rights, remedies, or obligations which it does not have in violation of UDTPA § 510; and

141.    Failing to disclose information concerning services that were known at the time of the transaction if such failure to disclose information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed, in violation of the UDTPA § 510

142.    The Plaintiffs and members of the class maintain deposit accounts, for either or both checking and savings with Chase and they paid Chase a monthly fee for those banking services or allowed Chase use of their funds on deposit for interest income in exchange for the deposit accounts.

143.    Chase knew that the Plaintiffs and class members were residents of a state different from the issuing state of the writ of garnishment.

COMPLAINT 24

144.    Chase knew that by law, the plaintiffs' and class member deposit accounts were located in a different state because the Plaintiffs were Alabama residents under Washington State law, the issuing state of the Writ.

145.    Chase knew that by contract, the Plaintiffs' savings account was located in Texas, MMC's account was located in Texas and the checking account was located in Illinois.

146.    Chase froze the Plaintiffs' bank accounts knowing the Plaintiffs had no bank accounts in the state of Washington that were under the jurisdiction of the King County Court.

147.    Chase charged the Plaintiffs legal processing fees, overdraft fees and/or insufficient funds fees from the garnishment.

148.    In the Deposit Agreement, Chase specifically states that it does not have to determine if any legal process is validly issued or enforceable. Yet Chase told the Plaintiffs that the garnishment was valid even though it was not.

149.    The Plaintiffs acted in reliance on Chase's response and did not file a request for the $7500 exemption again and borrowed more money to survive.

150.    Chase provides it will have no liability for these actions no matter what it does. That is not permitted by the CFPA and the Illinois Code of law.

151.    Chase Bank knew from the CFPB that these acts violated the Consumer Financial Protection Act. In fact, the CFPB specifically found that it was a violation of Sections 1031(a) and 1036(a)(1)(B) of the Consumer Financial Protection Act to require a consumer to waive a bank's liability for its unlawful garnishment conduct in a Deposit Account Agreement.

152.    Chase's actions were intentional as it was informed of the law in advance yet it still proceeded with the garnishment and misrepresentations.

153.    Chase thwarted the objectives of the Alabama exemption statutes by accomplishing informally and indirectly what it is explicitly prevented from doing formally and

COMPLAINT 25

directly. The policy underlying the application of the state's exemption statutes is to ensure that regardless of the debtor's improvidence, the debtor and his or her family will retain enough money to maintain a basic standard of living, so that the debtor may have a fair chance to remain a productive member of the community and not have to seek state financial assistance. Permitting a bank to apply the state of issuance's exemption statute governing exemptions to a foreigner would defeat the legislative policy underlying that exemption.

154.    The UDTPA provides that false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

155.    Chase violated Chapter 815, Section 510 of the Illinois Code by complying with a Washington State garnishment statute improvidently issued when the issuing state defined the Pontons' accounts as located within the state of Alabama, by freezing funds in excess of the exemption permitted by the state of Alabama, by telling the Plaintiffs that the Writ was valid, by refusing to release the funds when it knew the Plaintiffs would experience financial harm without the bare minimum to live on.

156.    Chase knew that the Plaintiffs would experience harm from its actions. Chase was only concerned about its own interests which included fee income and use of Plaintiffs' funds for investment purposes for nearly a year while the Plaintiffs had no use of the funds.

157.    A draft of this lawsuit along with a demand letter was submitted to Chase in advance.

158.    Plaintiff and Illinois Class Members, therefore, are entitled to injunctive relief and/or compensation for their economic damages and other actual harm, under the Illinois Code, including treble damages, mental anguish damages, costs and attorney fees for Chase's unfair and deceptive trade practices.

COMPLAINT 26

**SEVENTH CLAIM FOR RELIEF**
 **(Declaratory Relief – Nationwide, Texas, Illinois)**

159.    Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

160.    Chapter 37 of the Texas Civil Practice and Remedies Code provides that,"A court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.  An action or proceeding is not open to objection on the ground that a declaratory judgment or decree is prayed for."

161.    As described above, this Court has jurisdiction over this matter, and therefore may declare the rights of Plaintiffs.  Plaintiffs therefore seek an order declaring that Chase's practices in processing of illegal garnishments are unlawful, and that Chase is liable to Plaintiffs and the Texas Class for damages caused by that practice.

## TRIAL BY JURY

162.    The Pontons and Class members request a jury trial pursuant to Federal Rule of Civil Procedure 38(b) and tender the jury fee to the District Clerk's office as required by Tex. R. Civ. P. 216 and Tex. Gov't Code.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray that the Court:

1.  Award  such damages as may be proved at a jury trial, against Defendants, jointly and severally in the amount determined by the jury;

2.  Declare Chase's actions to be unlawful;

3.  Permanently enjoin Chase from performing further unfair and unlawful acts as alleged in this complaint;

COMPLAINT 27

4. Award equitable damages, mandating that Chase establish systems, procedures, and internal controls, to prevent illegal garnishments;

5. Award  punitive damages;

6. Award statutory damages and civil penalties;

7. Award damages for diminution of business reputation;

8. Award exemplary damages, and mental anguish damages including treble damages;

9. Award attorneys' fees pursuant to the terms of applicable law;

10. Provide a <u>trial by jury</u> as to all issues so triable;

11. Tax the costs of this action against Defendants; and

12. Award it such other relief as to the Court seems just and proper.

Respectfully Submitted,
February 22, 2024

/s/ Christina L Henry
Christina L Henry, WSBA 31273
SEATTLE CONSUMER JUSTICE
10728 16th Avenue SW
Seattle, WA 98146
Tel: 206-330-0595 / Fax 206-400-7609
chenry@hdm-legal.com

/s/ Venus Springs
Venus Springs
SPRINGS LAW FIRM PLLC
228 Park Ave S, Ste 54205
New York, NY 10003-1502
Telephone: (704) 241-9995
Email: vsprings@springslawfirm.com
(to file Pro Hac Vice Motion)

***Attorneys for the Plaintiffs***