1

THE HONORABLE RICHARD A. JONES

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

RONALD PONTON, SR., *Individually*,
RONALD PONTON, dba MEXICO MOVING
COMPANY, and TOMIKA PONTON, *on
behalf of themselves and others similarly
situated*,

        Plaintiffs,

v.

JPMORGAN CHASE & CO. and
JPMORGAN CHASE BANK, N.A.,

        Defendants.

CASE NO.: 2:24-CV-00248-RAJ

DEFENDANTS' MOTION TO
STAY PROCEEDINGS PENDING
MANDATORY INDIVIDUAL
ARBITRATION

NOTE ON MOTION CALENDAR:
JUNE 28, 2024

ORAL ARGUMENT REQUESTED

        Defendants JPMorgan Chase Bank, N.A. ("Chase") and JPMorgan Chase & Co. ("JPM," and with Chase, "Defendants") hereby move for an order (1) requiring plaintiffs Ronald Ponton, Sr., Ronald Ponton DBA Mexico Moving Company and Tomika Ponton (collectively, "Plaintiffs" or the "Pontons") to arbitrate the claims asserted in Plaintiffs' putative Class Action Complaint (Dkt. 1) (the "Complaint") on an individual basis pursuant to binding contractual arbitration provisions and (2) staying these proceedings until each such individual arbitration is completed (the "Motion").[1]

---

[1] On Monday, April 1, 2024, the parties met and conferred via a live Zoom call regarding the Motion, but Plaintiffs refused to consent to individual arbitration and necessarily refused to consent to a stay pending arbitration completion. (*See* May 31, 2024 Declaration of John S. Devlin ("Devlin Decl.") at Ex. A (April 1, 2024 correspondence)). (continued …)

LANE POWELL pc
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1

## I. **PRELIMINARY STATEMENT**

2

Plaintiffs, all Chase accountholders, allege that Chase has engaged in purportedly

3 deceptive practices by "responding to and processing garnishment notices against out-of-state

4 bank accounts" and allegedly "failing to apply the appropriate state exemptions" when doing so.

5 (Compl. ¶¶ 1-3). Plaintiffs bring various causes of action, including breach of contract premised

6 on Chase's Deposit Account Agreement ("DAA"), the agreement that governs the relationship

7 each of the Plaintiffs has with Chase. (*Id.* ¶¶ 120-134). While Plaintiffs' claims are without

8 merit and they have zero injury, their claims do not belong in this Court (or any federal court)

9 because Plaintiffs all agreed to arbitrate their claims on an individual basis in the DAA—the very

10 same contract Plaintiffs themselves rely on in the Complaint. They thus cannot proceed on a

11 putative class (or any other) basis in this Court.

12

Each of the Plaintiffs is bound to the terms of the DAA and its binding arbitration

13 provision by virtue of opening and/or maintaining their accounts at Chase. Plaintiffs opened two

14 accounts in person at Chase branches, where Plaintiffs expressly agreed to the terms of the DAA

15 and manifested their assent by signing a signature card acknowledging receipt of, and an

16 agreement to be bound by, the DAA. A third account was opened at a predecessor bank, and

17 Plaintiffs manifested their intent to be bound by the DAA for this account by continuing to use

18 it after Chase provided Plaintiffs with a copy of the DAA in a distribution that expressly advised

19 Plaintiff that a new binding arbitration provision governed the parties' contractual relationship

20 and provided for a period in which to opt-out, which Plaintiffs did not do. Indeed, Chase has

21 zero record of any arbitration opt-out of *any* of the Plaintiffs in this case, despite diligently

22 tracking such requests since the new arbitration provision was sent to customers and became

23 effective in 2012.

24

25

26 Given that this Motion seeks to stay this matter pending completion of mandatory
individual arbitration, this Motion falls within the parameters of LCR 7(e)(3), which provides for

27 8,400 words in connection with "motions aimed at changing the forum," including "motions to
… compel arbitration."

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 2
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

The DAA broadly binds Plaintiffs to arbitrate "any claims or disputes" and expressly responds to the question "What claims or disputes are subject to arbitration?" as follows:

> Claims or disputes between you and us about your deposit account, transactions involving your deposit account, and any related service or agreement with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the denial, approval of, or establishment of your account are included . . . .

Plaintiffs' claims here fall squarely within the scope of the DAA's broad arbitration provision. Their claims related to garnishment conduct vis-à-vis their accounts and holds on funds in their accounts are indisputably "about [their] deposit account[s]" as well as "transactions involving your deposit account," and their breach of contract claim premised on the DAA "aris[es] from or relat[es] to this agreement." Under no reasonable reading of the Complaint do Plaintiffs' claims fall outside the broad scope of the DAA's arbitration provision. The DAA also prohibits Plaintiffs from pursuing their claims on a putative class basis.

To permit Plaintiffs to rely on the DAA to support their claims, but at the same time selectively repudiate both the arbitration and class action waiver provisions therein, "would not only flout equity" but undermine "the congressional purpose underlying the Federal Arbitration Act [("FAA")]." *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692-93 (S.D.N.Y. 1966) (stay pending arbitration); *see also Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000) ("In considering whether respondent's agreement to arbitrate is unenforceable, we are mindful of the FAA's purpose 'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'"); *Mueller v. Garske*, 1 Wash. App. 406, 409 (1969) (citing 28 Am.Jur.2d Estoppel and Waiver § 69, at 696 (1966)) ("A party is not permitted to maintain inconsistent positions in judicial proceedings. It is not as strictly a question of estoppel as it is a rule of procedure based on manifest justice and on a consideration of orderliness, regularity and expedition in litigation."). Having relied on the DAA to bring claims against Chase, Plaintiffs should be estopped from any attempt to avoid the arbitration clause set forth in that same agreement. This Court can and

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 3
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

should decline to permit Plaintiffs to "have it both ways" and grant this Motion, staying this matter pending completion of mandatory individual arbitrations.

## II.  BACKGROUND

**A.     Plaintiffs' Three Accounts Are Governed By The DAA**

**1.     Plaintiffs' 2951 Account**

Plaintiffs are long-time Chase customers who originally opened their account ending in 2951 (the "2951 Account") at a predecessor bank in 1993. (*See* May 29, 2024 Declaration of Halie Williams ("Williams Decl.") at ¶¶ 3, 6).

Plaintiffs' 2951 Account was converted to a Chase account in or around 2002 following Chase's acquisition of that predecessor bank. (*Id.* ¶ 7).  Thereafter, Plaintiffs continued to maintain the 2951 Account with Chase and have maintained it continuously through the filing of this putative class action lawsuit. (May 29, 2024 Declaration of Maryann Galindo ("Galindo Decl.") at ¶¶ 11-13).

**2.     The February 2012 DAA's Addition Of A Binding Individual Arbitration and Class Action Waiver Provision, With An Opportunity For Account Holders To Opt Out Of Arbitration**

In December 2011, Chase included an updated DAA insert to the December 2011 monthly statements sent to then-existing customers, including Plaintiffs.  (Williams Decl. ¶¶ 8-9).  This updated DAA had an effective date of February 1, 2012 (the "February 2012 DAA"). (*Id.*).  The February 2012 DAA stated that the DAA was "formerly known as Account Rules and Regulations."   (*Id.* at ¶ 8, Ex. A p. 2).  The February 2012 DAA enclosed with Plaintiffs' statement for the 2951 Account also stated: "By signing a signature card or application, **or using any of our deposit account services**, you and anyone else identified as an owner of the account agree to the terms contained in this agreement." (*Id.* at Ex. A p. 4) (emphasis added).  It further provided: "[Chase] may change the terms of this agreement, including any fees and features of your account, at any time. … **By maintaining your account after the effective date of any change, you agree to the change**." (*Id.* at Ex. A p. 22) (emphasis added).

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 4
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

The very first page of the February 2012 DAA enclosed with Plaintiffs' statement also called out that the "arbitration language is new and includes several changes. Among other things: **you may opt out of future arbitration by April 2, 2012** for checking and savings accounts …." (*Id.* at Ex. A p. 1) (emphasis added).   To that end, the February 2012 DAA explained that:

> ***You and we agree that upon the election of either of us, any dispute relating in any way to your account or transactions will be resolved by binding arbitration*** as discussed below, and not through litigation in any court (except for matters in small claims court). This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").
>
> YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE, AS DISCUSSED BELOW.
>
> UNLESS YOU OPT OUT OF ARBITRATION, YOU AND WE ARE WAIVING THE RIGHT TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY, OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL. ***YOU AND WE ALSO WAIVE ANY ABILITY TO ASSERT OR PARTICIPATE ON A CLASS OR REPRESENTATIVE BASIS IN COURT OR IN ARBITRATION***.
>
> ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.

(*Id.* at Ex. A p. 24 (bold and italic emphases added; capitalization in original)).

The February 2012 DAA's arbitration provision broadly covered any claims or disputes arising from or related to the DAA and/or the Plaintiffs' accounts, related transactions, or related services, stating:

> *What claims or disputes are subject to arbitration?*
>
> ***Claims or disputes between you and us about your deposit account, transactions involving your deposit account***, safe deposit box, and any related service with us are subject to arbitration. ***Any claims or disputes arising from or relating to this agreement, any prior account agreement between us***, or the advertising, the application for, or the approval or establishment of your account are also included. ***Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist, or may arise in the future.*** All such claims or disputes are referred to in this agreement as "Claims."
>
> The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis.

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 5
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

(*Id.* at Ex. A p. 24 (bold and italic emphases after heading added)).  The February 2012 DAA also expressly reiterated in a separate section that Plaintiffs must pursue claims on an individual basis and may not pursue a class action:

*What about class actions or representative actions?*

Claims in arbitration will proceed **on an individual basis,** on behalf of the named parties only. **YOU AND WE AGREE NOT TO**:

1. **SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS** CLAIM OR CLASS ACTION, PRIVATE ATTORNEY GENERAL PROCEEDING, OR OTHER REPRESENTATIVE PROCEEDING;

2. SEEK TO CONSOLIDATE IN ARBITRATION ANY CLAIMS INVOLVING DIFFERENT CLAIMANTS (EXCEPT FOR CLAIMANTS WHO ARE ON THE SAME ACCOUNT), UNLESS WE AGREE;

3. **BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION** OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR

4. SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION, INCLUDING BUT NOT LIMITED TO PUBLIC INJUNCTIVE RELIEF. . . .

(*Id.* at Ex. A pp. 24-25 (capitalization in original, bolding and underlining after heading added)).  The February 2012 DAA also outlined procedures governing arbitration.  (*Id.* at Ex. A pp. 25-26).

Importantly, the February 2012 DAA also provided that all of the above regarding arbitration would apply unless Plaintiffs opted out of the arbitration agreement either (a) within sixty (60) days of opening their account or (b) within sixty (60) days of the February 1, 2012 effective date of the February 2012 DAA if their account was already open (*i.e.*, by April 2, 2012), and described how they could do so:

*Can I (the customer) cancel or opt out of this agreement to arbitrate?*

**You have the right to opt out of this agreement to arbitrate if you tell us within 60 days of opening your account (or within 60 days of the effective date of this agreement, if your account was already open).** If you want to opt out, call us at 1-800-935-9935, or see a banker. Otherwise this agreement to arbitrate will apply without limitation, regardless of whether 1) your account is closed; 2) you pay us in full any outstanding debt you owe; or 3) you file for bankruptcy.

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 6
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

(*Id.* ¶¶ 8-10, Ex. A p. 24 (emphases added)).[2]

Plaintiffs have consistently opted for paperless statements for the 2951 Account and thus received the February 2012 DAA electronically when Chase sent a .pdf file to their Chase.com secure online mailbox (and at the same time notified Plaintiffs by email that this upload was available for their review).  (*Id.* ¶ 9).

### 3.     Plaintiffs' 8883 Account

On February 12, 2013, Tomika Ponton opened a Chase Savings account ending in 8883 (the "8883 Account").  (Williams Decl. ¶ 11; Galindo Decl. ¶¶ 3-4, Ex. A). Ronald Ponton Sr. also signed a signature card and was added as signer to the 8883 Account that same day. (Williams Decl. ¶ 11; Galindo Decl. ¶¶ 5-6, Ex. B).

The signature cards that Plaintiffs executed on February 12, 2013 for the 8883 Account both contained the following express "ACKNOWLEDGMENT":

> By signing this Signature Card, I am applying to JPMorgan Chase Bank, N.A. (the Bank) to open the deposit account indicated above. … ***I acknowledge receipt of the Bank's Account Rules and Regulations or other applicable account agreement***, which includes all provisions that apply to this deposit account and the Bank Privacy Policy, ***and agree to be bound by the terms and conditions contained therein as amended from time to time***.

(Galindo Decl. ¶¶ 3-6, at Exs. A-B (emphases added)).

The February 2012 version of the DAA was still in effect on February 12, 2013, the day the 8883 Account was opened. (Williams Decl. ¶¶ 12-13).  Plaintiffs continued to maintain the 8883 Account with Chase and did so through the filing of this suit. (Galindo Decl. ¶¶ 11-13).

### 4.     Plaintiffs' 8783 Account

On April 18, 2013, Ronald Ponton DBA Mexico Moving Company opened a Chase Performance Business Checking ending in 8783 (the "8783 Account") by signing a Business Signature Card (Sole Proprietor).  (Williams Decl. ¶ 14; Galindo Decl. ¶¶ 7-10).

---

[2] Those were the only two methods provided for in the DAA to deliver an opt-out request until March 2023, at which time the DAA was revised to provide that the only method of opting out within the contractual 60-day period from the date a new account is opened is by calling the designated 1-800 number. (*See* Williams Decl. Ex. G p. 25, Ex. H p. 25, Ex. I p. 25, Ex. J p. 25).

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 7
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

The Business Signature Card for the 8783 Account that Ronald Ponton executed on April 18, 2013 defined "Depositor" as "RONALD PONTON DBA MEXICO MOVING COMPANY" and contained the following express "ACKNOWLEDGMENT":

> By signing this Signature Card, the Depositor applies to open a deposit account at JPMorgan Chase Bank, N.A. (the "Bank").… ***The Depositor acknowledges receipt of the Bank's Deposit Account Agreement or other applicable account agreement***, which includes all provisions that apply to this deposit account, and other agreements and service terms for account analysis and other treasury management services if applicable, ***and agree[s] to be bound by the terms and conditions contained therein as amended from time to time***.

(Galindo Decl. ¶¶ 7-8, Ex. C (emphases added)).

The day the 8783 Account was opened, the DAA effective March 24, 2013 was in effect. (Williams Decl. ¶¶ 15-16, Ex. B).  The March 24, 2013 DAA also provided that it was "formerly known as Account Rules and Regulations," and the arbitration-related provisions were the same as in the February 2012 DAA, except that the later version (a) did not say on the first page that the arbitration provision was new, and (b) provided for opt out only within 60 days of opening a new account, rather than also including a window of 60 days from February 1, 2012.  (*Compare* Williams Decl. ¶¶ 8-10, Ex. A, pp. 1-2, 24-26 *with id.* ¶¶ 14-16, Ex. B, pp. 1, 17-18).

On June 11, 2013, which was less than 60 days after the 8783 Account was opened on April 18, 2013, Tomika Ponton and Ronald Ponton Sr. both signed a Business Account Add Signers Form for the 8783 Account, thereby adding Tomika Ponton as an accountholder and signer. (Williams Decl. ¶ 17; Galindo Decl. ¶¶ 9-10, Ex. D).

Plaintiffs continued to maintain the 8783 Account with Chase and did so through the filing of this suit. (Galindo Decl. ¶¶ 11-13).

### 5. The DAAs In Effect When The Relevant Garnishment Was Applied To Plaintiffs' Accounts in February 2022, Through the Filing of This Suit in February 2024, Contained Substantively Identical Individual Arbitration Provisions

Plaintiffs have regularly used all three of their accounts over at least the last seven years and continued using them through the filing of this suit. (Galindo Decl. ¶¶ 11-13). By continuing to use their accounts, Plaintiffs have agreed to further amendments of the DAA. (*Id.* at Exs. A-D

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 8
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

(signature cards); Williams Decl. at Ex. A, p. 22; Ex. B, p. 15; Ex. C, p. 22; Ex. D, p. 22; Ex. E, p. 22; Ex. F, p. 22; Ex. G, p. 22; Ex. H, p. 22; Ex. I, p. 22; Ex. J, p. 22).

The versions of the DAA in effect when the garnishment at issue in this case was applied to Plaintiffs' accounts in February 2022 (Compl. ¶ 41) through filing of this suit in February 2024 (*see generally id.*) contained arbitration provisions substantively identical to those in the DAAs from 2012 and 2013, likewise calling for individual arbitration of disputes like those at issue here. (*Compare* Williams Decl. at Ex. A, pp. 24-26 and Ex. B, pp. 17-18 *with* Ex. C, pp. 24-25; Ex. D, pp. 25-26; Ex. E, pp. 25-26; Ex. F, pp. 25-26; Ex. G, pp. 25-16; Ex. H, pp. 25-26; Ex. I, pp. 25-26; Ex. J, pp. 25-26).

### 6.    Plaintiffs Did Not Opt Out of Arbitration

Plaintiffs allege, in bald and conclusory fashion, that they opted out of arbitration. *See* Compl. ¶ 19 ("The Plaintiffs have opted out of arbitration and opted out of the class action representation restrictions as explicitly provided for under the then-governing deposit account agreement.").  Plaintiffs refused to meaningfully elaborate on this allegation during the parties' April 1, 2024 meet-and-confer, including by expressly refusing to provide information regarding the who, what, when, where, when or how of Plaintiffs' alleged opt out, even though defense counsel explained that Chase diligently tracks arbitration opt-outs and its records do not reflect that any Plaintiffs opted out.  (*See* Devlin Ex. A at Items 2-3, 8)*;* May 30, 2024 Declaration of William Garrett ("Garrett Decl.") at ¶¶ 3-8; May 30, 2024 Declaration of Linda C. Martinez ("Martinez Decl.") at ¶¶ 3-8).

As described more fully in the declarations of Ms. Martinez and Mr. Garrett, Chase has had an established internal process for assessing and logging opt-out requests since the binding arbitration provision was added to the DAA in 2012 and sent to existing customers with their December 2011 statements.  (*See generally* Martinez Decl., Garrett Decl.)  Indeed, whether a customer's opt-out  request is made by calling the Chase 1-800 number set forth in the DAA or by communicating with a banker, Chase has consistently channeled all opt-out requests to a centralized email address that is diligently and constantly checked by the same professional in

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 9
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

the Chase Legal Department, who then assesses the validity of each such request and then logs valid opt outs in a master spreadsheet that identifies the person(s) who made the opt out request, the date(s) on which they made their request, the manner in which the opt-out request was made, and the accounts to which the opt out is applicable.  (Martinez Decl. ¶¶ 4-8; Garrett Decl. ¶¶ 3-5).

The consistency of this process is confirmed by the fact that the earliest opt out requests on record are from December 13 and 14, 2011, respectively−which is before the February 2012 DAA even went into effect. (Garrett Decl. ¶ 4).  Indeed, between December 13, 2011 (the earliest opt-out request made by any customer) and June 30, 2013 (60+ days from when both the 8883 Account and 8783 Account were opened), there were over 450 opt out requests logged.  (*Id.* ¶ 5).  But there are no entries in Chase's master arbitration opt out record reflecting any opt-out request by any of the Plaintiffs at any point in time−because they did not do so.  (*Id.* ¶¶ 6-8).

## III.  <u>ARGUMENT</u>

**A.    The Court Should Stay This Matter Pending Completion Of Individual Arbitration Of Plaintiffs' Claims Pursuant To The DAA**

The FAA, which applies here, provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[3]  Accordingly, the FAA mandates that, in a case in which "any issue [is] referrable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.  That is, "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, Case No. 22-1218, 601 U.S. ____ (S. Ct. May

_____

[3] The DAA specifically states the FAA applies. (Williams Decl. at Ex. A, p. 24 Ex. B, p. 17; Ex. C, p. 24; Ex. D, p. 25; Ex. E, p. 25; Ex. F, p. 25; Ex. G, p. 25; Ex. H, p. 25; Ex. I, p. 25; Ex. J, p.25).   The FAA also applies where, as here, there are written arbitration agreements involving interstate commerce. *See, e.g.*, *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013); *see also Johnson v. Gruma Corp.*, 614 F.3d 1062, 1066 (9th Cir. 2010) ("When an agreement falls within the purview of the FAA, there is a strong default presumption that the FAA, not state law, supplies the rules for arbitration." (internal quotation marks and ellipses omitted)).

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 10
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

16, 2024) at *6; *Tillman v. Tillman*, 825 F.3d 1069, 1075 (9th Cir. 2016) (same).

Per that statutory mandate, the Supreme Court has held that the FAA established "a liberal federal policy favoring arbitration agreements" and that courts must "rigorously" enforce them "according to their terms." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citation omitted); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (similar).  Accordingly, this Court must determine only "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (same). If "both conditions are met, then the court must enforce the arbitration agreement as written" and stay the action pending arbitration.  *Weber v. X Corp.*, No. 2:23-CV-0233-TOR, 2024 WL 470255, at *3 (E.D. Wash. Jan. 8, 2024); *Smith*, 601 U.S. ____ (S. Ct. May 16, 2024) at *6 (same).

Notably, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013).  Indeed, "[t]he standard for demonstrating arbitrability is not high."  *Am. Forest Holdings, LLC v. Bank of Am.*, No. CV-10-3044-RMP, 2011 WL 320911, at *1 (E.D. Wash. Jan. 28, 2011). In the Ninth Circuit, "the most minimal indication of the parties' intent to arbitrate must be given full effect." *Rep. of Nicaragua v. Std. Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991).  As such**, the "party resisting arbitration bears the burden** of proving that the claims at issue are unsuitable for arbitration." *Green Tree*, 531 U.S. at 91 (emphasis added).  Necessarily, here, that burden will rest with Plaintiffs.

In this case, Plaintiffs all agreed to an arbitration provision that broadly encompass their claims and which has been repeatedly recognized by courts across the country, as recently as earlier this year, as valid and enforceable.  The Motion should be granted in its entirety.

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 11
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

1.      **Plaintiffs Entered Into A Valid Agreement to Arbitrate Their Claims Individually**

Whether an agreement to arbitrate exists is determined by state contract law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Accordingly, the Court should "apply general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009).

The DAA states it is "governed by federal law and, when not superseded by federal law, the law of the state where your account is located." (Williams Decl. Ex. A p. 21; Ex. B p. 22; Ex. C p. 22; Ex. D p. 22; Ex. E p. F; Ex. G p. 22; Ex. H p. 22; Ex. I p. 22). Necessarily, Texas law applies to Plaintiffs' 8883 and 8783 Accounts because they were opened in Texas (Compl. ¶¶ 32-33; Galindo Decl. Exs. A-D), and Illinois law applies to Plaintiffs' 2951 Account because it was opened in Illinois. (Compl. ¶ 33; Williams Decl. ¶ 6).

It is well-settled that Texas and Illinois, as well as Washington, apply substantially similar rules with respect to contract formation. *See, e.g.*, *Dearion v. Fin. Mgmt. Sys., Inc.*, No. 15 C 1731, 2015 WL 4104339, at *2 n.3 (N.D. Ill. July 1, 2015) ("there is no significant difference between Illinois law and Texas law as to formation and enforcement of a contract"); *Wilcosky v. Amazon.com, Inc.*, 517 F. Supp. 3d 751, 763 (N.D. Ill. 2021) ("The Court … has not found any differences between Washington law and Illinois law regarding contract formation principles.").

"In order for there to be a contract between parties there must be a meeting of the minds or mutual assent as to the terms of the contract; however, it is not necessary that the parties share the same subjective understanding as to the terms of the contract." *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 313 (1987). "It suffices that the conduct of the contracting parties indicates an agreement to the terms of the alleged contract." *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 331 (1977). "As such, [a party's] subjective understanding of the terms of the contract is immaterial," *Midland*, 118 Ill. 2d at 314, and "a

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 12
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

party to an agreement is charged with knowledge of and assent to the agreement signed." *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 150 (2006).

Here, regardless of whether Texas, Illinois, or Washington law applies vis-à-vis Plaintiffs, they all clearly entered into valid agreements to arbitrate disputes on an individual basis.

### a.   Plaintiffs Assented To The DAA When Signing Signature Cards For The 8883 and 8783 Accounts

When Plaintiffs applied for 8883 and 8783 Accounts, they were offered services subject to the terms and conditions of the DAA and accepted Chase's offer by physically signing Signature Cards next to an acknowledgement of receipt of and agreement to be bound by the DAA. Plaintiffs have conceded as much in their own pleading, expressly alleging:

> 131. The Plaintiffs entered into contracts with the Defendants regarding the accounts held with the [sic] Chase Bank.  Each of the accounts opened by the Plaintiffs is governed by a Deposit Account Agreement.  At issue in this case are three separate accounts.   On information and belief, the Deposit Account Agreements for each of the accounts at issue is identical or substantially similar.

(Compl. ¶ 131).  This admission alone is dispositive.

Even if Plaintiffs had not admitted they assented to the DAA (and they have), courts across the country routinely hold that signing a signature card when opening a bank account, like Plaintiffs did here, demonstrates assent—including based on the same arbitration provision as here.  The Southern District of New York has repeatedly enforced the very same arbitration provision, where, as here, evidence was submitted that the depositors signed signature cards incorporating the DAA and/or received copies of the DAA. *See, e.g., KPA Promotion & Awards, Inc. v. JPMorgan Chase & Co*., No. 20-CIV-3910-(NRB), 2021 WL 1317163, at *1-2, *4 ("plaintiffs agreed to the terms of the DAA . . . when they opened accounts"); *Dill v. JPMorgan Chase Bank, N.A*., No. 19-CIV-10947-(KPF), 2020 WL 4345755, at *2, *9 (S.D.N.Y. Jul. 29, 2020) (plaintiff "executed a signature card acknowledging receipt of the . . . DAA"); *Scott v. JPMorgan Chase & Co.,* No. 13-CIV-646-(KPF), 2014 WL 338753, at *2-3, *10-11 (S.D.N.Y. Jan. 30, 2014) (similar), *aff'd*, 603 F. App'x 33 (2d Cir. 2015).  Indeed, in January of this year, the Southern District of New York compelled arbitration under the DAA when plaintiffs

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 13
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

electronically signed the same signature card.  *Curtis v. JPMorgan Chase Bank, N.A.*, No. 22 CIV. 10286 (LGS), 2024 WL 283474, at \*4 (S.D.N.Y. Jan. 25, 2024) (electronic manifestation of assent to the DAA arbitration provision).

The District of New Jersey has compelled arbitration because "[a]s a customer, Plaintiff agreed to abide by [Chase's DAA]." *VR Consultants, Inc. v. J.P. Morgan Chase & Co.*, No. 20-CV-6110, 2021 WL 5494373, at \*1-2 (D.N.J. Nov. 23, 2021). The Northern District of Illinois has compelled arbitration because "the signed signature cards for plaintiffs' Chase accounts acknowledging receipt of the DAA demonstrate plaintiffs' assent to the DAA's terms." *Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 457 (N.D. Ill. 2021).[4]  The District of Maryland has compelled arbitration where the evidence submitted included signed signature cards "indicating [plaintiff's] assent" to the DAA. *Sunmonu v. Chase Bank, N.A.*, No. CV-GLR-18-1695, 2019 WL 1258788, at \*2 (D. Md. Mar. 19, 2019).  The Central District of California has compelled arbitration where the depositor signed a signature card incorporating the DAA. *Johnson v. JPMorgan Chase Bank, N.A.*, No. EDCV172477JGBSPX (SPx), 2018 WL 4726042, at \*3-4 (C.D. Cal. Sept. 18, 2018).[5]  And just last month, the Eastern District of Pennsylvania compelled arbitration under the DAA when Plaintiffs "electronically sign[ed]" their signature card acknowledging that they "read and agree[d]" to be bound by the DAA.  *Glavin v. JPMorgan Chase Bank, N.A.*, No. CV 23-1708, 2024 WL 1536739, at \*2 (E.D. Pa. Apr. 9, 2024).

In short, Plaintiffs assented to the DAA when signing the Signature Cards, with an unambiguous manifestation of assent reflected by their own handwritten signatures.

---

[4] *See also Clements v. JPMorgan Chase Bank, N.A.*, No. 18-CV-660, Dkt. 46 (N.D. Ill. Dec. 12, 2018) (Devlin Decl. at Ex. B) (order staying putative class action and compelling individual arbitration where the plaintiff signed signature card "acknowledg[ing]" and "agree[ing]" to be bound by the DAA even though she claimed not to have received or read the DAA or understand that she was agreeing to the DAA by signing the signature card)).

[5] *See also, e.g., Hyde-Edwards Salon & Spa v. JP Morgan Chase & Co*., 20CV762 DMS (MDD), 2020 WL 6871050, at \*2-3 (S.D. Cal. Nov. 23, 2020); *Sanchez v. J.P. Morgan Chase Bank, N.*A., No. 14-20468-CIV-MORENO, 2014 WL 4063046, at \*2-3 (S.D. Fla. Aug. 15, 2014); *Novak v. JP Morgan Chase Bank, NA*, 2008 WL 907380, at \*5 (E.D. Mich. Mar. 31, 2008) (all compelling arbitration under the DAA).

b.    **Plaintiffs Assented To The DAA When Maintaining The 2951 Account At Chase Upon Its Conversion And Maintaining All Three Accounts Over Time**

Plaintiffs further assented to the DAA and its arbitration provision by maintaining and continually using their accounts over time.  (*See* Galindo Decl. ¶¶ 11-13.)  It is settled that continual use of account services expresses a manifestation of assent to be bound to the contract governing the account holder's relationship with Chase.  *Clements*, 18-cv-660 (N.D. Ill.), Dkt. 46 (Devlin Decl. Ex. B), at p. 7 (Plaintiff's "continued use of Chase's services after notification of the applicability of the DAA on both the signature card and her bank statements, amounts to acceptance of the DAA's terms and conditions"); *Anonymous v. JP Morgan Chase &* Co., 2005 No. 05-CIV-2442-(JGK), WL 2861589, at *4 (S.D.N.Y. Oct. 31, 2005) (plaintiff entered into valid agreement to arbitrate based on "uncontested evidence that the plaintiff used [his] Chase card and made payments to Chase for that use for several months"); *see also Midland*, 118 Ill. 2d at 313-314 ("It suffices that the conduct of the contracting parties indicates an agreement to the terms of the alleged contract. Otherwise, a party would be free to avoid his contractual liabilities by simply denying that which his course of conduct indicates." (quotation marks and citation omitted)).

Moreover, the DAA itself flagged that use of deposit services and maintenance of an account at Chase reflects an agreement to be bound to its terms—and if Plaintiffs did not wish to be bound to the DAA for the 2951 Account they could have closed it at any time, but did not.  To be sure, the DAA in effect on February 1, 2012 and March 24, 2013—and all versions in effect between the application of the garnishment at issue in this lawsuit and its filing—provided that:

> By signing a signature card or application, or **using any of our deposit account services, you** and anyone else identified as an owner of the account **agree to the terms contained in this agreement**.

(Williams Decl. Ex. A p. 4; Ex. B p. 4; Ex. C p. 5; Ex. D p. 5; Ex. E p. 5; Ex. F p. 5; Ex. G p. 5; Ex. H p. 5; Ex. I p. 5; Ex. J. P. 5 (emphases added)); and

> [Chase] may change the terms of this agreement, including any fees and features of your account, at any time. … **By maintaining your account after the effective date of any change, you agree to the change**.

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 15
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1  (*Id.* Ex. A p. 22; Ex. B p. 15; Ex. C p. 22; Ex. D p. 22; Ex. E p. 22; Ex. F p. 22; Ex. G p. 22; Ex.

2  H p. 22; Ex. I p. 22) (emphases added)).

3         Plaintiffs thus assented to the DAA for their accounts by maintaining and continuing to

4  use all three of their accounts.  Plaintiffs concede this point in their own pleading by contending

5  that the DAA governs their relationship as to all three accounts. (*See* Compl. ¶¶ 120-134 (Count

6  V for breach of the DAA); *id.*  ¶ 34 (citing the DAA as basis for naming JPM as a party)); *see*

7  *also infra* at Part III.A.1.

8         **c.**    **Plaintiffs Did Not Opt Out Of The DAA**

9         There is zero evidence of any opt-out request by Plaintiffs, despite diligent tracking by

10  the bank of all opt-out requests by customers since an arbitration provision was added to the

11  DAA.  (*See* Martinez Decl. ¶¶ 3-8; Garrett Decl. ¶¶ 3-8). As such, Defendants have satisfied their

12  burden to show the parties entered into a valid agreement to arbitrate. *See, e.g.*, *Ashbey*, 785 F.3d

13  at 1323-26 (agreement to arbitrate where, as here, arbitration clause was clearly disclosed).

14         Plaintiffs' conclusory assertion that they "did whatever was necessary to comply with

15  whatever the requirements for opt out may have been" (*see* Compl. ¶ 19) is plainly insufficient

16  to overcome Chase's evidence to the contrary.  As explained in the oft-cited case *Oppenheimer*

17  *& Co., Inc. v. Neidhardt*:

18        it is not sufficient for the party opposing arbitration to utter general denials of the
19        facts on which the right to arbitration depends. If the party seeking arbitration has
      substantiated the entitlement by a showing of evidentiary facts, the party opposing
20        may not rest on a denial but must submit evidentiary facts showing that there is a
      dispute of fact to be tried.

21  56 F.3d 352, 358 (2d Cir. 1995) (citations omitted); *see also, e.g., Grabowski v. C.H. Robinson*

22  *Co.*, 817 F. Supp. 2d 1159, 1168 (S.D. Cal. 2011) (same, citing *Oppenheimer*).

23         Put differently, where, as here, the evidence shows there is an agreement to arbitrate and

24  no actual opt out, courts compel arbitration and do not require any further proceedings – and this

25  Court should do the same.  *See, e.g.*, *Guerrero v. Equifax*, No. CV 11-6555 PSG PLAX, 2012

26  WL 7683512, at *7-8 (C.D. Cal. Feb. 24, 2012) (citing *Oppenheimer*) ("Plaintiff's summary

27  denial … unaccompanied by any supporting evidentiary facts, [is] insufficient" to raise triable

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 16
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

question of fact); *DuBois v. Macy's East Inc.*, 338 F. App'x 32, 33-34 (2d Cir. 2009) (plaintiff's conclusory statements he opted out insufficient to defeat a motion to compel arbitration); *Matthews v. Gucci*, No. CV 21-434-KSM, 2022 WL 462406, at *7 (E.D. Pa. Feb. 15, 2022) ("blanket assertions … are insufficient to raise an issue of fact to warrant limited discovery into the existence of the [agreement] or to deny Defendants' motion to compel") (citing cases); *see also Glass v. Tradesmen Int'l, LLC*, No. 5:19-CV-01331, 2020 WL 5798018, at *5 (N.D. Ohio Sept. 29, 2020) (granting motion to compel arbitration and finding "questionable for several reasons" plaintiff's testimony that she opted out by personally handing a paper to her employer's HR employee where, among other things, "it [was] undisputed that [plaintiff's] name is not on the spreadsheet used to track employees that have opted out").

### 2. Plaintiffs' Claims Are Covered by The DAA's Arbitration Provision

The Ninth Circuit applies an expansive construction to arbitration provisions that, by their terms, apply to all disputes "arising from or relating to" an agreement:

> Every court that has construed the phrase "arising in connection with" in an arbitration clause has interpreted that language broadly. We likewise conclude that the language "arising in connection with" reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract.

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999) (Ninth Circuit follows "the admonition of *Moses H. Cone* to construe arbitration clauses expansively"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *see also AT&T Techs, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (same).  To be sure, "any dispute" arbitration provisions are viewed as "broad and far reaching."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (dispute within scope of arbitration agreement where clause provided for arbitration of "[a]ny dispute, controversy or claim arising out of or relating to the validity, construction, enforceability or performance of this Agreement").[6]

---

[6] *See also, e.g., Ferguson*, 733 F.3d at 931, 937-38 (instructing district court to grant the motion and stay where plaintiffs alleged colleges "engaged in an deceptive scheme to entice []
(continued …)

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 17
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

Here, the DAA provides that "disputes between you and us about your deposit account, transactions involving your deposit account … and any related service with us are subject to arbitration," as well as "[a]ny claims or disputes arising from or relating to this agreement [the DAA]." (Williams Decl. at Ex. A, p. 24; Ex. B, p. 17; Ex. C, p. 24; Ex. D, p. 25; Ex. E, p. 25; Ex. F, p. 25; Ex. G, p. 25; Ex. H, p. 25; Ex. I, p. 25; Ex. J, p. 25).  It is thus the paradigm "broad and far-reaching" arbitration clause entitled to a presumption of arbitrability; courts that have considered the arbitration provision in the DAA have confirmed that it is "broad" and ordered arbitration of disputes relating to Chase accounts.  *See, e.g., KPA Promotion*, 2021 WL 1317163, at *5 n.9 (clause "plainly broad enough to encompass [the] claims"); *Dill*, 2020 WL 4345755, at *6 ("language of the DAA's arbitration provision is indisputably broad").

Here, Plaintiffs' claims are clearly "about" their deposit accounts and transactions involving their deposit accounts, and also "aris[e] or relat[e]" to the DAA because Plaintiffs allege that Chase improperly applied a garnishment to their three Chase accounts, and Plaintiffs' fifth cause of action for breach of contract is based on the DAA itself. (Compl. ¶¶ 120-134). Accordingly, Plaintiffs' claims fall squarely within the scope of the broad arbitration provision they agreed to, and this matter should be stayed pending completion of individual arbitration. *See, e.g., Glavin*, 2024 WL 1536739, at *3 (compelling arbitration as "plaintiff's claims are based upon her deposit account and transactions involving her deposit account" and finding "Plaintiff's interpretation to the contrary [] strained and unconvincing"); *Ekin I*, 84 F. Supp. 3d at 1178 (compelling arbitration under broad clause covering "any dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com"); *United Ass'n Local Union No. 26 v. Big Rooter/Nelson Plumbing & Mech., Inc.*, Case No. 10-CV-1425MJP, 2011 WL 130335, at *4 (W.D. Wash. Jan. 14, 2011)

---

enrollment" because the arbitration agreements were "broad[]… as they refer to 'any disputes,' 'all claims,' and 'disputes arising from [students'] enrollment'"); *Ekin v. Amazon Servs.*, 84 F. Supp. 3d 1172, 1178 (W.D. Wash. Dec. 10, 2014) (hereinafter "*Ekin I*") (granting motion to compel as in keeping with "Ninth Circuit precedent and the decisions of sister circuits holding specifically that when arbitration agreements contain broad 'relating to any dispute' language, both future and past disputes are included in the scope of the arbitration agreement").

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 18
CASE NO. 2:24-CV-00248-RAJ

122006.0305/9770210.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

(holding "fraudulent inducement and misrepresentation claims are subject to the arbitration provision"); *Ferguson*, 733 F.3d at 931, 937-38 (*see supra* at p. 19 n. 6).

**3.    The Arbitration Must Proceed on an Individual Basis.**

Arbitration agreements must be enforced as written and the DAA requires arbitration on an individual basis. As the Supreme Court explained in *Concepcion*, "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit *with whom* a party will arbitrate its disputes." 563 U.S. at 344 (citations omitted). Necessarily, Chase is fully permitted to limit the availability of class proceedings in an arbitration agreement. *See Coneff v. AT&T Corp.*, 673 F.3d 1155, 1160-61 (9th Cir. 2012) ("*Concepcion* controls, the FAA preempts the Washington State law invalidating the class-action waiver."). Put differently, "a plaintiff may not avoid an arbitration agreement simply because he would prefer to pursue class claims rather than arbitrate individually." *Ekin v. Amazon Servs., LLC*, No. C14-0244-JCC, 2015 WL 11233144, at *2 (W.D. Wash. Feb. 10, 2015) (hereinafter "*Ekin II*") (denying plaintiffs' Motion to Clarify Order Compelling Arbitration [in *Ekin I*] or in the Alternative, for Certification Under 28 U.S.C. § 1292(b) and instead clarifying "that Plaintiff's case is stayed pending the arbitration in which the parties are to engage should Plaintiff continue to desire resolution of his claims").

Here, as noted above, the DAA contained multiple conspicuous class action waivers making clear that "YOU AND WE ARE WAIVING ANY ABILITY TO ASSERT OR PARTICIPATE IN A CLASS REPRESENTATIVE, OR CONSOLIDATED PROCEEDING, WHETHER IN COURT OR ARBITRATION." (Williams Decl. at Ex. A, p. 24; Ex. B, p. 17; Ex. C, p. 24; Ex. D, p. 25; Ex. E, p. 25; Ex. F, p. 25; Ex. G, p. 25; Ex. H, p. 25; Ex. I, p. 25; Ex. J, p. 25 (capitalization in original)).

The DAA further made clear that:

Claims in arbitration will proceed *on an individual basis*, on behalf of the named parties only. YOU AND WE *AGREE NOT* TO:

1. SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION ….

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 19
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

3. BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE….

(Williams Decl. at Ex. A, pp. 24-25; Ex. B, pp. 17-18; Ex. C, p. 24; Ex. D, p. 25; Ex. E, p. 25; Ex. F, p. 26; Ex. G, p. 26; Ex. H, p. 26; Ex. I, p. 26; Ex. J, p. 26 (underlining and italics added).

This language plainly prohibits Plaintiffs from pursuing claims on behalf of a putative class, and Plaintiffs' claims must be arbitrated on an individual basis.

**B.   JPM May Enforce The DAA's Arbitration Provisions Against Plaintiffs As A Non-Signatory**

It is well-settled that the mere status of a holding or parent company, without more, is insufficient to state a claim. *See, e.g.*, *E.J. Chin Realty Corp. v. JPMorgan Chase Bank, N.A.*, 2024 U.S. Dist. LEXIS 10868, at *1-2 (S.D.N.Y. Jan. 22, 2024) (dismissing JPM as mere parent company); *Rao v. JPMorgan Chase Bank, N.A.*, No. 21-CV-1361, 2022 WL 847560, at *1 n.1 (N.D. Ill. Mar. 22, 2022) (same); *Rodriguez v. JPMorgan Chase & Co*., 809 F. Supp. 2d 1291, 1300 (S.D. Cal. 2011) (same).  Here, JPM does not provide banking services and was not involved in the processing of the garnishment that is at issue in this action; instead, it is a "financial holding company" whose "principal bank subsidiary is JPMorgan Chase Bank, National Association." *See, e.g.*, Form 10-K for the fiscal year ended 12/31/2023 of JPMorgan Chase & Co., available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0000019617/000001961724000225/jpm-20231231.htm).  As such, JPM is not a proper party to this action.[7]

Nonetheless, the DAA's arbitration provision extends to JPM in connection with this lawsuit.  The February 1, 2012 DAA, the March 24, 2013 DAA, and every DAA in effect between application of the garnishment to Plaintiffs' accounts in February 2022 and Plaintiffs' filing of this lawsuit in February 2024 all state:

---

[7] Plaintiffs' only alleged basis for including JPM is an allegation that "[t]he Deposit [Account] Agreement that governed the account[s] at the time of garnishment had the name JPMorgan Chase as the owner at the bottom of the agreement." (Compl. ¶ 34).  Simply reading the DAA in effect in February 2022, however, reveals that this allegation is false, as JPM's name appears solely in a copyright line at the bottom of each page rather than as an indication of any substantive involvement by JPM in the provision of banking services offered by Chase Bank. (*See generally* Williams Decl. at ¶ 18, Ex. C).

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

*Does arbitration apply to Claims involving third parties?*

Arbitration applies whenever there is a Claim between you and us. **If a third party is also involved in a Claim between you and us, then the Claim will be decided with respect to the third party in arbitration as well**, and it must be named as a party in accordance with the rules of procedure governing the arbitration. …. For purposes of arbitration, "you" includes any person who is listed on your account, and "we" includes JPMorgan Chase Bank, N.A., **all its affiliates,** and all third parties who are regarded as agents or representatives of ours in connection with a Claim.

(Williams Decl. at Ex. A, p. 25; Ex. B, p. 18; Ex. C, p. 25; Ex. D, p. 26; Ex. E, p. 26; Ex. F, p. 26; Ex. G, p. 26; Ex. H, p. 26; Ex. I, p. 26; Ex. J, p. 26 (emphasis added)).  Here, JPM is plainly a "third party" and "affiliate[]" that Plaintiffs have "involved in a claim between [Plaintiffs] and [Chase Bank]," as all claims against Chase are also asserted against JPM.  As such, their claims against JPM (invalid as they are) are also subject to the DAA's individual arbitration provisions by their plain terms.  *See, e.g., Scott.*, 603 Fed. App'x at 35-36 (DAA arbitration clause extends to third parties and Chase affiliates); *Glavin*, 2024 WL 1536739, at *3 (same, noting that the DAA "expressly cover[s] claims against third-parties" who are "involved in a Claim").[8]

**C.      Plaintiffs Should Also Be Estopped From Repudiating The Arbitration Provisions**

Plaintiffs also should be estopped from avoiding the arbitration provisions in the DAA, as they rely on that very same agreement to support their claims. A party "cannot rely on the contract when it works to their advantage by enforcing the obligations" of the defendant, "but then repudiate the contract and its arbitration clause when they believe it works against them." *Fluor Daniel Intercontinental, Inc. v. Gen. Elec. Co.*, No. 98-CIV-7181-(WHP), 1999 WL 637236, at *7 (S.D.N.Y. Aug. 20, 1999); *see also Green Tree*, 531 U.S. at 89 ("[W]e are mindful of the FAA's purpose 'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts'"); *Mueller*, 1

---

[8] *See also Curtis*, 2024 WL 283474, at *6 ("court[s] should 'apply state-law principles of contract interpretation' when examining the parties' written agreements for evidence of whether the contracting parties intended an issue to be determined by the arbitrator" but "also must be 'guided by the federal substantive law of arbitrability created by the Federal Arbitration Act' in applying those principles, which requires that the court 'construe the parties' intentions generously in favor of arbitrability' and resolve 'any ambiguity in the contract... in favor of arbitration"); *Chiron Corp.*, 207 F.3d at 1131 ("any dispute" clauses are "broad and far reaching"); *Ferguson*, 733 F.3d at 937-38 (same); *Ekin I*, 84 F. Supp. 3d at 1178 (same).

Wash. App. at 409 ("A party is not permitted to maintain inconsistent positions in judicial proceedings. It is not as strictly a question of estoppel as it is a rule of procedure based on manifest justice and on a consideration of orderliness, regularity and expedition in litigation.").

Here, Plaintiffs claim that Chase breached the DAA; indeed, they quote from the DAA when making this claim. (Compl ¶¶ 131-135). Plaintiffs "cannot have it both ways" and should be estopped from repudiating the arbitration provisions. *Fluor*, 1999 WL 637236, at *7; *Green Tree*, 531 U.S. at 89; *Mueller*, 1 Wash. App. at 409.

## D.      This Action Should Be Stayed Pending Arbitration

Where, as here, claims must be arbitrated and a stay is requested, the FAA mandates that the court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. That is, "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith*, 601 U.S. _____ at *6; *Tillman*, 825 F.3d at 1075 (same). This rule exists because it "would waste judicial resources" if the court "permit[ted] discovery," took evidence, and "determine[d] the merits of the case at the same time as the arbitrator is going through a substantially parallel process." *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).

//

//

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 22
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1

## IV.  CONCLUSION

2    For the foregoing reasons, the Court should grant Defendants' Motion in its entirety and

3 stay this case pending completion of individual arbitration of Plaintiffs' claims.

4    DATED this 31st day of May 2024.

5                                  LANE POWELL PC

6                                  By: s/ John S. Devlin

7                                      John S. Devlin III, WSBA No. 23988
                                       1420 Fifth Avenue, Suite 4200
8                                      P.O. Box 91302
                                       Seattle, Washington 98111-9402
9                                      Telephone:  206.223.7000
                                       devlinj@lanepowell.com
10
                                   GREENBERG TRAURIG LLP
11
                                   By: s/ Michael Cedillos
12                                     Michael Cedillos (pro hac vice)
                                       IL Bar. 6296052, CA Bar 284794
13                                     77 W. Wacker Drive, Suite 3100
                                       Chicago, Illinois 60601
14                                     Telephone:  312-456-8400
                                       Fax:  312-456-8435
15                                     cedillosm@gtlaw.com

16                                 *Attorneys for Defendants JPMorgan Chase & Co.
                                   and JPMorgan Chase Bank, N.A.*
17
                                   I certify that this memorandum contains 8,399
18                                 words, in compliance with the Local Civil Rules.

19

20

21

22

23

24

25

26

27

DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING MANDATORY INDIVIDUAL ARBITRATION - 23
CASE NO. 2:24-CV-00248-RAJ
122006.0305/9770210.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107