IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RONALD PONTON, SR., Individually, RONALD PONTON, dba MEXICO MOVING COMPANY, and TOMIKA PONTON, | Case No.: 2:24-cv-00248-RAJ |
| Plaintiffs, | |
| v | **FIRST AMENDED COMPLAINT** |
| JPMORGAN CHASE & CO. and JPMORGAN CHASE BANK, N.A., | |
| Defendants. | **(JURY TRIAL DEMAND)** |

COMES NOW Plaintiffs Ronald Ponton, Sr, Tomika Ponton, and Ronald Ponton, dba Mexico Moving Company ("MMC") (The Pontons and MMC will be collectively called the "Plaintiffs" or the "Pontons") complaining of Defendants, and allege and say:

## INTRODUCTION

### ILLEGAL GARNISHMENT

1.      This lawsuit is about JPMorgan Chase's unfair and deceptive practices in the area of bank account garnishments that persisted even after the CFPB Consent Order became public against another regulated institution on May 4, 2022.

2.      JPMorgan Chase engaged in unfair acts and practices by responding to and processing garnishment notices against out-of-state bank accounts in violation of certain garnishment-issuing states' prohibitions against out-of-state garnishment.

FIRST AMENDED COMPLAINT 1

3.      JPMorgan Chase engaged in unfair acts and practices by failing to apply the appropriate state exemptions to certain consumers' deposit accounts after receiving garnishment notices.

4.      JPMorgan Chase engaged in deceptive acts and practices by misrepresenting to consumers, by implication, the applicable state exemption rights for garnishment by applying the issuing state's exemptions, instead of the exemptions of the consumer's state of residence, where the states of issuance and residence differ.

5.      JPMorgan Chase engaged in unfair acts and practices by using a deposit agreement that required consumers to direct JPMorgan Chase not to contest legal process and waive JPMorgan Chase's liability for its unlawful garnishment conduct; and

6.      JPMorgan Chase engaged in deceptive acts and practices by suggesting consumers could not bring legal claims for misrepresenting consumers' legal rights against JPMorgan Chase regarding garnishment proceedings in violation of Sections 1031(a) and 1036(a)(1)(B) of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a) and 5536(a)(1)(B). JPMorgan Chase's duty to the Pontons arises out of the CFPA.

7.      On June 22, 2023, the SEC issued a cease and desist order against JPMorgan Chase because "47 million records of communications of JPMorgan employees in the Chase banking retail group, thousands of whom were registered representatives of JPMorgan, are unrecoverable." According to JPMorgan Chase; beginning in 2016, JPMorgan Chase undertook a project to delete from its system older communications and documents no longer required to be retained. The deletion tasks implemented by employees in connection with the project experienced glitches, with the identified documents not, in fact, being expunged. In June 2019, while troubleshooting the issue, JPMorgan Chase deleted 47 million records.

FIRST AMENDED COMPLAINT 2

8.      On December 17, 2021, JPMorgan Chase admitted to widespread recordkeeping failures and agreed to pay a $125 million penalty.

9.      On January 16, 2024, JPMorgan Chase had to pay $18 Million for violating the federal Whistleblower Protection Rule. JPMorgan Chase was found to be impeding customers from reporting violations to the government.

10.      After an enforcement action on September 18, 2013, the Office of the Comptroller of the Currency issued a cease and desist order against Chase Bank for unsafe or unsound practices that involved deficiencies in the bank's practices and procedures related to the preparation and notarization of affidavits and other sworn documents used in the bank's debt collection litigation.

11.      Unlicensed debt collectors like Green & Norwood of Seattle, Washington are only able to engage in abusive practices in attempts to collect questionable accounts because companies like JPMorgan Chase are complicit in and facilitate their illegal activities. In the nearly year-long process it took to recover their funds from JPMorgan Chase, the Plaintiffs suffered harm and paid unnecessary credit card interest.

## THE PARTIES

12.      Plaintiff Ronald Ponton Sr. is an individual and a resident of Alabama. Plaintiff Tomika Ponton is an individual and a resident of Alabama.

13.      Plaintiff Ronald Ponton dba Mexico Moving Company ("MMC") is a sole proprietorship with a principal office in Alabama.

14.      The Pontons and MMC are "Consumers" covered under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") (Tex. Bus. & Com. Code § 17.45(4))  as they are individuals with a small business of assets under 25 million dollars who purchased

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

banking account services from the Defendants in exchange for monthly fees and/or the Defendants' use of their funds for interest income.

15.    JPMorgan Chase & Co. is a Delaware corporation. The location of the Principal Office as stated in the 2023 Prospectus filed with the United States Securities Exchange Commission (SEC) is 277 Park Avenue, New York, New York 10172-10003. The location of the principal executive office is 383 Madison Avenue, New York, New York 10179. When referred to by itself, JPMorgan Chase & Co. will be individually referred to in this complaint as "JPMorgan Chase."

16.    JPMorgan Chase is a "Person" under Section 17.45(3) of the DTPA.

17.    JPMorgan Chase Bank, N.A., is a national association with OCC Charter Number 8 ("Chase Bank"). Chase Bank lists Columbus, Ohio as its principal office on its charter.

18.    Chase Bank is a "Person" under Section 17.45(3) of the DTPA.

19.    Based on JPMorgan Chase's legal filings, the company, along with its divisions and subsidiaries, is operated as one united organization, and financial statements are consolidated and reported as one entity among its various subsidiaries.

20.    JPMorgan Chase is a registered bank holding company that owns and controls Chase Bank, other U.S. insured depository institutions, Edge Act corporations organized under section 25A of the Federal Reserve Act (12 U.S.C. § 611 et seq.), and nonbank subsidiaries around the world.

21.    JPMC has adopted an enterprise-wide risk management, compliance, and audit program designed to identify and manage risks across the consolidated organization.

22.    Because JPMC operates as one united enterprise and the holding company controls Chase Bank and advertises on registration statements filed with the United States Securities and Exchange Commission, to the public and to regulators in this manner, it has enterprise liability.

FIRST AMENDED COMPLAINT 4

23.     The defendants will collectively be referred to in this complaint as "JPMC".

## JURISDICTION

24.     The Plaintiffs have opted out of arbitration and opted out of the class action representation restrictions as explicitly provided for under the then-governing deposit account agreement.

25.     Venue is proper in Washington because the events that caused the Plaintiffs' harm occurred in this jurisdiction. Washington has a substantial connection to the Plaintiffs' claims. This Court also has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

26.     Jurisdiction is proper because the Parties are citizens of different states (no defendant is a resident of Alabama) and the amount in controversy exceeds $75,000, exclusive of interests and costs, and thus the court has diversity jurisdiction subject to 28 U.S.C. §1332.

## PUBLIC INTEREST

27.     The Pontons allege that JPMC is engaging in, has engaged in, or is about to engage in the unlawful acts or practices set forth below; that JPMC has, by means of these unlawful acts and practices, caused damage to, or acquired money or property from the Pontons; and that  JPMC has adversely affected the lawful conduct of trade and commerce, thereby directly or indirectly affecting the Pontons. Therefore, the Pontons are of the opinion that these proceedings are in the public interest.

## TRADE OR COMMERCE

28.     JPMC has, at all times described below, engaged in conduct that constitutes "trade" and "commerce" as those terms are defined by § 17.45(6) of the DTPA.

## NOTICE BEFORE SUIT

FIRST AMENDED COMPLAINT 5

1    29.    The Pontons informed JPMC generally of the alleged unlawful conduct

2    described below, at least sixty (60) days before filing suit, as required by § 17.505(a) of the

3    DTPA.

4    30.    The Pontons requested that JPMC agree to a litigation hold prior to litigation and

5    JPMC would not agree to place a litigation hold.

6    **THE CONSENT ORDER**

7    31.    On May 4, 2022, the CFPB issued a consent order with another large financial

8    institution by regulatory standards ("Regulated Institution") subject to the same exact regulatory

9    guidelines as JPMC (the "Consent Order"). The CFPB expressly stated that it applies the same

10   regulatory scheme to institutions under its supervision in the same size category.

11   32.    The CFPB's website disclosed that it examined its largest financial institution

12   during the COVID crisis for compliance with its garnishment requirements. Upon information

13   belief, JPMC is the largest financial institution regulated by the CFPB.

14   33.    The CFPB reviewed the garnishment-related practices of the Regulated

15   Institution and identified the following law violations: (1) Regulated Institution engaged in

16   unfair acts and practices by responding to and processing garnishment notices against out-of-

17   state bank accounts in violation of certain garnishment-issuing states' prohibitions against out-

18   of-state garnishment; (2) Regulated Institution engaged in unfair acts and practices by failing to

19   apply the appropriate state exemptions to certain consumers' deposit accounts after receiving

20   garnishment notices; (3) Regulated Institution engaged in deceptive acts and practices by

21   misrepresenting to consumers, by implication, the applicable state exemption rights for

22   garnishment by applying the issuing state's exemptions instead of the exemptions of the

23   consumer's state of residence, where the states of issuance and residence differ; (4) Regulated

24   Institution engaged in unfair acts and practices by using a deposit agreement that required

25   consumers to waive Regulated Institution's liability for its unlawful garnishment conduct; and

26   (5) Regulated Institution engaged in deceptive acts and practices by suggesting consumers could

not bring legal claims misrepresenting consumers' legal rights against Regulated Institution

FIRST AMENDED COMPLAINT 6

1  regarding garnishment proceedings, all in violation of Sections 1031(a) and 1036(a)(1)(B) of

2  the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a) and

3  5536(a)(1)(B). Under Sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565.

4      34.    JPMC has engaged in all of the practices outlined in paragraph 23 as unlawful

5  for regulated financial institutions by the CFPB.

6

7                          **FACTUAL STATEMENT**

8      35.    The paragraphs enumerated above and below are incorporated by reference.

9      36.    Ronald and Tomika Ponton were Alabama residents at all relevant times.

10     37.    The Pontons opened a personal checking account ending in 2951 in Illinois with

11 First Chicago Bank which merged with Bank One Corporation.

12     38.    Upon information and belief the merger with First Chicago Bank was in 1998 and

13 Bank One sent an amendment to the account agreement that allowed the Pontons to opt out of

14 arbitration in writing after the merger and the Pontons have those records.

15

16     39.    Upon information and belief, when J.P. Morgan Chase & Co. and Bank One

17 Corporation merged their holding companies on July 1, 2004, Bank One had over 51 million

18 credit cards issued, nearly 7 million retail households, and about 20,000 middle market customers.

19     40.    The Pontons received a notice that by April 2, 2012, they had a right to opt-out of

20 arbitration with JPMC.  The deposit agreement had a question on how to opt-out and the response

21 was; "You have the right to opt out of this agreement to arbitrate if you tell us within 60 days of

22 opening your account (or within 60 days of the effective date of this agreement, if your account

23 was already open). **If you want to opt out, call us at 1-800-935-9935, or see a banker.**

24

25

26

FIRST AMENDED COMPLAINT 7

41.     Ronald Ponton Sr. opened a small business account as a "doing business as" account for MMC ending in 8783 in Texas with a bank employee in 2013. When he opened this account, he opted out of arbitration.

42.     The Pontons opened a personal savings account ending in 8883 in Texas in 2013. When they opened this account, they opted out with a banker.

43.     A Deposit Agreement was given to the Pontons in the process of the account openings in 2013 and it provided the following right to opt out of arbitration:  You have the right to opt out of this agreement to arbitrate if you tell us within 60 days of opening your account. If you want to opt out, call us at 1-800-935-9935 or see a banker. Otherwise this agreement to arbitrate will apply without limitation, regardless of whether 1) your account is closed; 2) you pay us in full any outstanding debt you owe; or 3) you file for bankruptcy. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. The Pontons exercised their right verbally in the bank with a bank employee.

44.     The Deposit Agreement that governed the account at the time of the garnishment in 2021 had the name of JPMorgan Chase as the owner at the bottom of the agreement.

45.     Prior to 2009, Ronald Ponton and Tomika Ponton were victims of fraud by LLS America, LLC ("LLS America"). They filed a proof of claim in a bankruptcy filed by LLS America in the Eastern District of Washington (Spokane).

46.     LLS America trustee, Bruce Kriegman then filed adversary actions against the Pontons claiming they were net winners in an alleged Ponzi scheme and obtained a default judgment against them in the Eastern District of Washington in 2015 while they were missionaries in Mexico.

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

47.     Trustee Kriegman, a Seattle resident, then took the judgment he obtained in federal court in Spokane County, Washington, and filed it as a foreign judgment in state court in Seattle in King County, Washington against Mobile, Alabama residents Ronald Ponton and Tomika Ponton.

48.     On February 10, 2022, Kriegman filed an Application for a Writ of Garnishment with the Clerk of the Superior Court of Washington for King County in the amount of $120,670.59. The Application had the caption Bruce Kriegman, solely in his capacity as court-appointed Chapter 11 Trustee for LLS America, LLC, Judgment Creditor, v. Ronald Ponton, Jr. and Tomika Ponton, Judgment Debtors, v. JPMorgan Chase Bank, N.A., Garnishee.

49.     On February 11, 2022, Kriegman, through his attorneys Green & Norwood PLLC, mailed the Writ of Garnishment to JPMC in Monroe, Louisiana along with a check for $20.00 to cover a processing fee. The writ was mistakenly written for Ronald Ponton Jr not Sr and Tomika Ponton.

50.     The Writ had a specific form of Answer that JPMC was instructed to complete and send to the court, the defendant, and Kriegman.

51.     On February 22, 2022, JPMC placed a hold on three of the Ponton's accounts, two personal accounts, and one business account as follows:

| Account Number | Amount of Hold | Present Balance |
|---|---|---|
| 8783 | 55596.67 | 55596.67 |
| 8883 | 2250.70 | 2250.70 |
| 2951 | 601.51 | 601.51 |

52.     On February 22, 2022, JPMC mailed a letter to the Pontons telling them that federal or state law required them to immediately place a hold on their Chase Bank accounts when no law that governed their accounts required a hold to be placed on their accounts.

FIRST AMENDED COMPLAINT 9

53.     The Pontons received the letter from JPMC notifying them about the garnishment along with the garnishment documents on or about February 28, 2022. It was not until that date that the Pontons realized what exactly had happened.

54.     That letter provided that the funds would be held until the expiration date of the hold, if there was one, or the funds were sent to the issuer.

55.     JPMC mailed its answer to the Writ on or around March 2, 2022, based on the postmark. JPMC did not use the specific form of answer that was requested by the Writ.

56.     JPMC told the King County court that it had three accounts of the Pontons with funds totaling $58,448.87.

57.     JPMC did not notify the issuing court that the relevant deposit accounts were not located in the state from which the garnishment notice was issued as required by law.

58.     JPMC failed to notify the garnishment issuing court that the plaintiffs did not have garnishable assets located within the state of Washington as required by law.

59.     As Alabama residents, the Pontons were entitled to a $7500 exemption from garnishment. JPMC granted the Pontons the $500 exemption entitled to Washington state residents.

60.     JPMC did not provide any disclosure to the Pontons that would provide them with notice of their rights to elect an exemption under Alabama law or the process by which to elect any exemptions other than the exemption that was entitled to Washington state residents.

61.     The Pontons operate a small business that involves moving people's belongings that are relocating into or out of Central America. Customers regularly access the Chase Bank MMC small business account. MMC requires a 30 percent deposit into 8783 at the time of contract, a 60 percent deposit upon pickup of the goods, and 10 percent upon delivery.

FIRST AMENDED COMPLAINT 10

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

62.     JPMC was well aware of this arrangement as it explicitly opened the account understanding the nature of the Pontons' small business. JPMC discussed at length MMC's relationship with its customers. JPMC knew that denying MMC's customers and the Pontons access to the clients' funds would damage the Plaintiffs' relationships with MMC's customers.

63.     A person who is employed could hope for a new paycheck in the next two weeks. The Pontons being self-employed and their business and personal accounts being harmed left them with damages.

64.     On the day Chase Bank froze the Pontons account, the Pontons' clients had deposited $14,881.36 in funds in the MMC account. Chase Bank left the Pontons in a desperate situation, unable to return client funds and unable to fulfill obligations to their clients under contract.

65.     Upon information and belief, Chase Bank has ongoing examinations by the CFPB, and JPMC was fully informed of the requirements set forth for garnishments by the regulatory agencies including being under a previous Matters Requiring Attention.

66.     When the Plaintiffs' funds were frozen, they requested a release from JPMC and no relief came. The Plaintiffs then tried to obtain an attorney in Washington. They tried to obtain an attorney with legal aid in Washington state and they could not get an attorney because they were not Washington state residents.

67.     The Plaintiffs tried to obtain an attorney in Alabama but they could not find nor afford an Alabama attorney to litigate in the state of Washington. They tried Alabama legal aid but Alabama pro bono attorneys only work within the state of Alabama.

68.     The Plaintiffs were told by the Washington state attorneys to try to file bankruptcy. The Plaintiffs tried to file bankruptcy in Alabama; however, the Plaintiffs were told that they were

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

not qualified to file bankruptcy and that the Alabama attorney would not proceed with a bankruptcy action.

69.     Eventually, the Plaintiffs only found New York attorneys who were willing to help the Plaintiffs. The New York attorney contracted with a Washington State local counsel.

70.     The Plaintiffs incurred tens of thousands in unnecessary legal fees paid on their credit cards. The Plaintiffs paid high interest rates. JPMC did not release the Plaintiffs' funds of $58,448.87 until December 2022.

71.     JPMC had a duty to determine which states were Restriction States as the CFPB Consent Order specifically said the list was not exclusive and regulated institutions had to determine the list for themselves. In Washington State, it is undisputed that the situs of the bank account is the domicile of the owner. In Washington State it is also not in dispute that RCW 6.27.080 Writ directed to financial institution—Form and service; provides the following;

> A writ naming the financial institution as the garnishee defendant shall be effective only to attach deposits of the defendant in the financial institution and compensation payable for personal services due the defendant from the financial institution. A writ naming a branch as garnishee defendant shall be effective only to attach the deposits, accounts, credits, or other personal property of the defendant (excluding compensation payable for personal services) in the possession or control of the particular branch to which the writ is directed and on which service is made.
> A writ of garnishment is effective against property in the possession or control of a financial institution only if the writ of garnishment is directed to and names a branch as garnishee defendant.

72.     The CFPB stated that the list of Restriction States in its order was not an exclusive list. JPMC had a duty to research and make a determination for itself which states are Restriction States. It is gross negligence or willful misconduct to have not made such a determination and still be processing out-of-state garnishments.

FIRST AMENDED COMPLAINT 12

73.     JPMC had a duty to amend its Answer to the writ of garnishment in the Pontons' case even if it made an error in the initial Answer. JPMC has a practice of amending garnishment answers for its own benefit.

74.     JPMC has several times declined to obey a court order regarding a garnishment when it has decided it was in its best interests to decline to obey.

75.     JPMC has amended Answers to garnishments to correct errors for only its own benefit for example when it wanted to ensure funds were available to pay monies due to JPMC and its affiliates but it did not do so for the garnishment that affected the Plaintiffs.

76.     JPMC knew its financial power and level of trust as a federally regulated institution would influence the Plaintiffs.

77.     Plaintiffs have suffered damages to their business and their reputations. By way of example, the process of opening, attempting to open, and moving the numerous accounts is laborious and expensive. Further, the interference with banking relations has caused the Plaintiffs to lose customers who rely on the Plaintiffs' banking account to assist with obtaining international moving services.

78.     Section 4.103(a) of the Texas Business and Commerce Code provides that the effect of the provisions of this chapter may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure.

## LEGAL CLAIMS

**FIRST CLAIM FOR RELIEF**
**(The Texas Deceptive Trade Practices Act ("DTPA")) (the Pontons)**

79.     The foregoing and following paragraphs are incorporated by reference.

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

80.     Plaintiffs are "consumers" under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Section 17.50 and 17.50(a)(3) and under Section 17.45(4) of the Texas Business and Commerce Code, by purchasing deposit account services for money or the use of funds on deposit interest. JPMorgan Chase and Chase Bank are "persons" that may be sued under the DTPA, under Section 17.45(3) of the Texas Business and Commerce Code, for providing such services.

81.     JPMC, as alleged above, has in the course of trade or commerce engaged in false, misleading, and deceptive acts and practices declared unlawful, in § 17.46(a) and (b) of the DTPA as follows:

    a.  Engaging in false, misleading, or deceptive acts or practices in the conduct of trade or commerce in violation of DTPA § 17.46(a);

    b.  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses benefits, or quantities that they do not have in violation of DTPA § 17.46(b)(5);

    c.  Representing that an agreement confers or involves rights, remedies, or obligations which it does not have in violation of DTPA § 17.46(b)(12); and

    d.  Failing to disclose information concerning services that were known at the time of the transaction if such failure to disclose information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed, in violation of DTPA § 17.46(b)(24).

82.     The Plaintiffs maintain deposit accounts, for either or both checking and savings with JPMC and they paid JPMC a monthly fee for those banking services or allowed JPMC use of their funds on deposit for interest income in exchange for the deposit accounts.

FIRST AMENDED COMPLAINT 14

83.     JPMC knew that the Plaintiffs were residents of a state different from the issuing state of the writ of garnishment.

84.     JPMC knew that by law, the plaintiffs' deposit accounts were located in a different state because the Plaintiffs were Alabama residents under Washington State law, the issuing state of the Writ.

85.     JPMC knew that, by contract, the Plaintiffs' savings account and other such accounts were contractually located in Texas. MMC's account was located in Texas and the checking account was located in Illinois.

86.     JPMC froze the Plaintiffs' bank accounts knowing the Plaintiffs had no bank accounts in the state of Washington that were under the jurisdiction of the King County Court.

87.     JPMC charged the Plaintiffs' legal processing fees, overdraft fees, and/or insufficient funds fees from the garnishment.

88.     In the Deposit Agreement, JPMC  specifically states that it does not have to determine if any legal process is validly issued or enforceable. Yet JPMC told the Plaintiffs that the garnishment was valid even though it was not.

89.     The Plaintiffs relied on JPMC's response and did not file a request for the $7500 exemption again and borrowed more money to survive.

90.      JPMC provides it will have no liability for these actions no matter what it does. That is not permitted by the CFPA and the Texas Code of Law.

91.     JPMC knew from the CFPB that these acts violated the Consumer Financial Protection Act. In fact, the CFPB specifically found that it was a violation of Sections 1031(a) and 1036(a)(1)(B) of the Consumer Financial Protection Act to require a consumer to waive a bank's liability for its unlawful garnishment conduct in a Deposit Account Agreement.

**SEATTLE CONSUMER JUSTICE**
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

92.     JPMC's actions were intentional as it was informed of the law in advance yet it still proceeded with the garnishment and misrepresentations.

93.     JPMC thwarted the objectives of the Alabama exemption statutes by accomplishing informally and indirectly what it is explicitly prevented from doing formally and directly. The policy underlying the application of the state's exemption statutes is to ensure that regardless of the debtor's improvidence, the debtor and his or her family will retain enough money to maintain a basic standard of living, so that the debtor may have a fair chance to remain a productive member of the community and not have to seek state financial assistance. Permitting a bank to apply the state of issuance's exemption statute governing exemptions to a foreigner would defeat the legislative policy underlying that exemption.

94.     The DTPA provides that false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are unlawful. Tex. Bus. & Com. Code § 17.46.

95.     JPMC violated Tex. Bus. & Com. Code § 17.46 by complying with a Washington State garnishment statute improvidently issued when the issuing state defined the Pontons' accounts as located within the state of Alabama, by freezing funds in excess of the exemption permitted by the state of Alabama, by telling the Plaintiffs that the Writ was valid, by refusing to release the funds when it knew the Plaintiffs would experience financial harm without the bare minimum to live on.

96.     JPMC knew that the Plaintiffs would experience harm from its actions. JPMC was only concerned about its own interests which included fee income and the use of the Plaintiffs' funds for investment purposes for nearly a year while the Plaintiffs had no use of the funds.

FIRST AMENDED COMPLAINT 16

97.     A draft of this lawsuit along with a demand letter was submitted to JPMC in compliance with the  60-day warning notice to JPMC of a DTPA claim by the Plaintiffs.   treble damages, costs, and attorney fees for JPMC's unfair and deceptive trade practices.

98.     Plaintiffs, therefore, are entitled to injunctive relief and/or compensation for their economic damages and other actual harm, under Section 17.50 of the Texas Business and Commerce Code, including treble damages, costs, and attorney fees for JPMC's unfair and deceptive trade practices.

**SECOND CLAIM FOR RELIEF**
**(Gross Negligence)**

99.     The foregoing and following Paragraphs are incorporated by reference.

100.     Defendants' duty to the Pontons arises out of law not out of contract specifically the CFPA Sections 1031(a) and 1036(a)(1)(B).

101.     Green & Norwood misused the garnishment process to harass and cause harm to the Pontons by filing a proceeding in King County when they knew it was an improper venue and the Pontons had no assets in King County for the malicious purpose that the Pontons would not be able to defend themselves or that it would be financially untenable for them to defend themselves in a distant garnishment proceeding.

102.     At the time of the filing of JPMC's answer, if JPMC were not complicit, the case would have finally ended in March 2022 upon the Court realizing that the Pontons' bank accounts were not located in Washington.

103.     The defendants' actions placed Kriegman in a position of power over the Plaintiffs.

104.     Moreover, JPMC could not use the court order as a basis to continue to hold the funds because the court had ordered the continued hold only because of JPMC's false answer indicating the plaintiffs' funds were located within Washington state.

FIRST AMENDED COMPLAINT 17

**SEATTLE CONSUMER JUSTICE**
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

105.    Indeed, JPMC could have held its own funds in place of the Plaintiffs' funds or at least released the Alabama statutory exemption, to avoid further damage to the Plaintiffs.

106.    The Pontons and other consumers suffered financial, business reputation, non-economic and economic damages due to the Defendants' misconduct and policy.

107.    The Defendants are liable for the above damages, including special and punitive damages for Defendants' willful misconduct.

**THIRD CLAIM FOR RELIEF**
**(In the Alternative – Willful Misconduct )**

108.    The foregoing and following paragraphs are incorporated by reference.

109.    At any point after the May 2022 order was published, JPMC's actions were no longer sustainable as negligent or grossly negligent. Not only did JPMC know the law without question on this date but it knew that the Pontons had read the laws as the Consent Order had been provided to JPMC.

110.    This cannot be an error or mistake because when alerted of the situation, JPMC intentionally and maliciously aided Green & Norwood in its continued pursuit of an illegal garnishment of the Plaintiffs.

111.    The CFPB said a company typically responds in 15 days yet in 30 days JPMC still had not responded to the Plaintiffs.

112.    When JPMC finally responded, it wrote, "We enforced a valid garnishment and court order for your accounts." JPMC deceived the CFPB in the response that it gave because the Writ was not valid.  Due to JPMC's actions, it took many months to prove the garnishment was invalid.

113.    JPMC also wrote, "Our agreement with you is that if we receive any legal process relating to you or your account, you authorize us to comply with it."  This is after the Pontons

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

1
2
3

explained the harm they suffered and after JPMC had a copy of the CFPB Consent Order knowing that it was the regulatory position that it was an unfair practice to make consumers authorize a federally regulated financial institution to comply with an illegal garnishment.

4
5
6
7

114.    Additionally, the Deposit Agreement specifically states that JPMC must always act reasonably and in good faith and the Pontons did not authorize JPMC to comply with the illegal garnishment because such actions were not reasonable and in good faith.

8
9
10

115.    The Pontons and other consumers suffered damages due to Defendants' misconduct and policy. Defendants are liable for actual and punitive damages under Texas law for Defendants' intentional conduct and policy applicable to certain consumers.

11
12

116.    The Pontons suffered actual damages in the form of attorney fees, and they request punitive damages for JPMC's malicious and wanton actions.

13
14

**FOURTH CLAIM FOR RELIEF**
**(Breach of Contract )**

15

117.    The foregoing and following paragraphs are incorporated by reference.

16
17
18
19

118.    The Plaintiffs entered into contracts with the Defendants regarding the accounts held with the Chase Bank. Each of the accounts opened by the Plaintiffs is governed by a Deposit Account Agreement. At issue in this case are three separate accounts.

20
21
22
23
24
25
26

119.    The Deposit Account Agreement specifies that account holders, such as the Plaintiffs, "may withdraw funds the next business day after the day in which the funds are deposited." The JPMC Funds Availability Policy further specifies that "Wire transfers, electronic direct deposits, and cash deposits will be available on the day we receive your deposit. Except as described later in this policy, when you make other deposits, the funds are available on the first business day after the day we receive your deposit."

FIRST AMENDED COMPLAINT 19

120.     It also provides; "Once funds are available, you may withdraw them or use them to pay checks and other items." All of the funds held with Defendant JPMC at the time JPMC froze the funds in the Plaintiffs' accounts had been properly deposited with Chase Bank and were available for withdrawal pursuant to the Funds Availability Policy. Therefore, all of the funds in the relevant accounts should have been available for immediate withdrawal by the Plaintiffs.

121.     The Deposit Account Agreement allows JPMC to place a hold on customer accounts for legal proceedings. However, the agreement also provides "Any provision of this agreement that limits the bank's liability does not negate the bank's duty (if any) under applicable law to act in good faith and with reasonable care."

122.     Prior to the garnishment, JPMC has been examined by its regulators, the Federal Reserve Board, the Office of the Comptroller of the Currency, and the Consumer Financial Protection Bureau. According to the CFPB, for the largest and most complex banks in the country, the agency has implemented a year-round supervision program.

123.     JPMC being a large and complex bank, was informed by the CFPB of its interpretation of the CFPA. Upon information and belief, JPMC was informed by the CFPB that failing to check the issuing state's rules on garnishment is an unfair and deceptive trade practice under the CFPA during its pandemic bank account garnishment reviews. Upon information and belief, JPMC was informed by the CFPB that failing to apply the state of residence's exemptions on garnishment is an unfair and deceptive trade practice under the CFPA.

124.     There is no reasonable basis for JPMC to believe that a court in Kings County, Washington would have the authority to order the garnishment of funds located within the state of Alabama from Alabama citizens after being specifically told otherwise.

125.     There is no reasonable basis for JPMC that Alabama wants its citizens to be governed by another state's exemption. Alabama has to provide social services to its citizens and

FIRST AMENDED COMPLAINT 20

1
2

therefore; is the only state that can tell which exemption applies to its citizens under these circumstances.

3
4
5

126.    JPMC has a plethora of attorneys who set up compliance programs and review legal matters. JPMC understands the issue of jurisdiction because it has filed many motions on that issue. JPMC told the Plaintiffs that the Writ was reviewed by its legal department.

6
7
8
9

127.    JPMC owes the Plaintiffs a duty of good faith as a part of its contracts with them. At a minimum, good faith means honesty in fact and the observance of reasonable commercial standards of fair dealing.

10
11
12

128.    JPMC contemplated that failure to give access to all of the funds in a person's or business' bank accounts except another state's exemptions which are lower than the resident state would cause severe mental anguish at the time of the contract formation.

13
14

129.    JPMC had access to the Plaintiffs' funds for its full investment purposes while the Plaintiffs did not.

15
16
17
18
19
20
21
22
23
24

130.    JPMC has breached its contracts with the Plaintiffs by failing to deliver available funds to them upon demand. When JPMC froze the funds in the accounts, the funds therein were not available for immediate distribution to the account holders pursuant to the Deposit Agreement and its Funds Availability Policy. The Deposit Agreement provides no reasonable basis for placing a hold on the Plaintiffs' funds without providing the Alabama state exemption. Further, even if the Deposit Agreement were to provide for a hold on all the funds at the time except $500, such hold as employed by JPMC in this matter was beyond any reasonable time or commercial standards of fair dealing.

25
26

131.    The Plaintiffs are entitled to recover their actual damages and costs along with loss of bargain damages. For the accounts governed by Texas law, the Plaintiffs also are entitled to

FIRST AMENDED COMPLAINT 21

recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code chapter 38 because this is a claim for breach of a written contract.

**FIFTH CLAIM FOR RELIEF**
**(Illinois Code Chapter 815, 510/1 through 510/7, Uniform Deceptive Trade Practices Act ("UDTPA") and Consumer Fraud Act (Excluding MMC)**

132.    Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

133.    Plaintiffs are "consumers" under the Illinois Unfair and Deceptive Trade Practices- Act ("UDTPA"), under Chapter 815, Section 510 of the Illinois Code, by purchasing deposit account services for money or the use of funds on deposit interest. JPMorgan Chase and Chase Bank are "persons" that may be sued under the UDTPA, for providing such services.

134.    JPMC, as alleged above, has in the course of trade or commerce engaged in false, misleading, and deceptive acts and practices declared unlawful, in § 510 of the UDTPA as follows:

a.  Engaging in false, misleading, or deceptive acts or practices in the conduct of trade or commerce in violation of the UDTPA;

b.  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses benefits, or quantities that they do not have in violation of UDTPA;

c.  Representing that an agreement confers or involves rights, remedies, or obligations which it does not have in violation of UDTPA § 510; and

d.  Failing to disclose information concerning services that were known at the time of the transaction if such failure to disclose information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed, in violation of the UDTPA § 510

**SEATTLE CONSUMER JUSTICE**
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

135.    The Plaintiffs maintain deposit accounts, for either or both checking and savings with JPMC and they paid JPMC a monthly fee for those banking services or allowed JPMC use of their funds on deposit for interest income in exchange for the deposit accounts.

136.    JPMC knew that the Plaintiffs were residents of a state different from the issuing state of the writ of garnishment.

137.    JPMC knew that by law, the Plaintiffs' deposit accounts were located in a different state because the Plaintiffs were Alabama residents under Washington State law, the issuing state of the Writ.

138.    JPMC knew that by contract, the Plaintiffs' savings account was located in Texas, MMC's account was located in Texas and the checking account was located in Illinois.

139.    JPMC froze the Plaintiffs' bank accounts knowing the Plaintiffs had no bank accounts in the state of Washington that were under the jurisdiction of the King County Superior Court of the State of Washington.

140.    JPMC charged the Plaintiffs' legal processing fees, overdraft fees, and/or insufficient funds fees from the garnishment.

141.    In the Deposit Agreement, JPMC specifically states that they do not have to determine if any legal process is validly issued or enforceable. Yet, JPMC told the Plaintiffs that the garnishment was valid even though it was not.

142.    The Plaintiffs acted in reliance on JPMC's response and did not file a request for the $7500 exemption again and borrowed more money to survive.

143.     JPMC provides they will have no liability for these actions no matter what they do. That is not permitted by the CFPA and the Illinois Code of Law.

144.    JPMC knew from the CFPB that these acts violated the Consumer Financial Protection Act ("CFPA"). In fact, the CFPB specifically found that it was a violation of Sections

FIRST AMENDED COMPLAINT 23

**SEATTLE CONSUMER JUSTICE**
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

1031(a) and 1036(a)(1)(B) of the CFPA to require a consumer to waive a bank's liability for its

unlawful garnishment conduct in a Deposit Account Agreement.

145.    JPMC's actions were intentional as they were informed of the law in advance yet

they still proceeded with the garnishment and misrepresentations.

146.    JPMC thwarted the objectives of the Alabama exemption statutes by

accomplishing informally and indirectly what they are explicitly prevented from doing formally

and directly. The policy underlying the application of the state's exemption statutes is to ensure

that regardless of the debtor's improvidence, the debtor and his or her family will retain enough

money to maintain a basic standard of living, so that the debtor may have a fair chance to remain

a productive member of the community and not have to seek state financial assistance. Permitting

a bank to apply the state of issuance's exemption statute governing exemptions to a foreigner

would defeat the legislative policy underlying that exemption.

147.    The UDTPA provides that false, misleading, or deceptive acts or practices in the

conduct of any trade or commerce are unlawful.

148.    JPMC violated Chapter 815, Section 510 of the Illinois Code by complying with

a Washington State garnishment statute improvidently issued when the issuing state defined the

Pontons' accounts as located within the state of Alabama, by freezing funds in excess of the

exemption permitted by the state of Alabama, by telling the Plaintiffs that the Writ was valid, by

refusing to release the funds when they knew the Plaintiffs would experience financial harm

without the bare minimum to live on.

149.    JPMC knew that the Plaintiffs would experience harm from their actions. JPMC

was only concerned about their own interests which included fee income and use of the Plaintiffs'

funds for investment purposes for nearly a year while the Plaintiffs had no use of the funds.

FIRST AMENDED COMPLAINT 24

150.    A draft of this lawsuit along with a demand letter was submitted to JPMC in advance.

151.    In Illinois damages for violations of the UDTPA are available under the Consumer Fraud Act (CFA), 815 ILCS 505/10a, Plaintiffs, therefore, are entitled to injunctive relief and/or compensation for their economic damages and other actual harm, under the CFA, including treble damages, mental anguish damages, costs and attorney fees for JPMC's unfair and deceptive trade practices.

**SIXTH CLAIM FOR RELIEF**
**(Washington's Consumer Protection Act, Revised Code of Washington 19.86 et al. ("CPA")**
**(In the Alternative)**

152.    Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

153.    In RCW 19.86.020, the Washington Consumer Protection Act ("CPA") provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

154.    A CPA claim consists of the following elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to the plaintiff in his or her business or property; and (5) causation.

155.    As described herein, JPMC has engaged in unfair or deceptive acts or practices in violation of the Revised Code of Washington **(**"RCW") 19.86 et al.

156.    Such practices are likely to be repeated further, as illustrated by, among other things, similar conduct toward other alleged debtors in Washington.

157.    Such practices are likely to be repeated further, as illustrated by, among other things, the garnishment of funds from the Plaintiffs' deposit account after the CFPB specifically found that these actions violated the CFPA.

FIRST AMENDED COMPLAINT 25

158.     Such conduct has damaged the Plaintiffs by, without limitation, making them unable to manage their finances and causing them to lose business opportunities without the use of the funds that were garnished and time away from his business to stay in business without these funds.

159.     Such conduct constitutes an unacceptable risk to and damages the public interest because it injured other persons, had the capacity to injure other persons, or has the capacity to injure other persons as described in RCW 19.86.093. Such conduct should be enjoined as authorized by RCW 19.86.

160.     JPMC knew that the Plaintiffs would experience harm from their actions. JPMC was only concerned about their own interests which included fee income and use of the Plaintiffs' funds for investment purposes for nearly a year while the Plaintiffs had no use of the funds.

161.     A draft of this lawsuit along with a demand letter was submitted to JPMC in advance.

162.     In Illinois damages for violations of the UDTPA are available under the Consumer Fraud Act (CFA), 815 ILCS 505/10a, Plaintiffs, therefore, are entitled to injunctive relief and/or compensation for their economic damages and other actual harm, under the CFA, including treble damages, mental anguish damages, costs and attorney fees for JPMC's unfair and deceptive trade practices.

163.     In addition to damages, Plaintiffs are entitled to recover treble damages, attorneys' fees, and costs pursuant to RCW 19.86.090.

**SEVENTH CLAIM FOR RELIEF**
**(Intentional Infliction of Emotional Distress) (the Pontons)**

164.     Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

165.    Defendants' illegal actions were wanton, intentional, and willful.

166.    JPMC is a provider of banking services which is a federally regulated activity. When it denied the Pontons access to its income along with employment, JPMC intentionally inflicted harm on the Pontons. JPMC had the opportunity multiple times to undo the harm including when the complaint was filed with the CFPB, yet it intentionally misrepresented the facts and claimed its actions were valid and required by law.

167.    In fact, JPMC had a copy of a Consent Order whereby a similar financial institution was cited for numerous violations by the same regulator for the same activity that JPMC was engaging in against the Pontons. JPMC's actions were wanton and outrageous.

168.    The Pontons suffered emotional damages directly due to JPMC's gross negligence and willful misconduct.  Defendants are liable for actual and punitive damages along with pain and suffering under state law for Defendants' reckless acts.

**EIGHTH CLAIM FOR RELIEF**
**(Declaratory and Injunctive Relief)**

169.    Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

170.    There is an actual controversy between the parties concerning the garnishment of out-of-state accounts in response to writs from out-of-state forums that JPMC has sought to collect from the Plaintiffs.

171.    The Plaintiffs seek declaratory judgments pursuant to 28 U.S.C. § 2201 as to the respective rights of the parties.

172.    The Plaintiffs seek a declaration that the JPMC is estopped from garnishing funds from the deposit accounts of the Plaintiffs and should be enjoined from engaging in garnishments

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

from writs issued from out of state if the account is located in another state and the state is a Restriction State as defined in the Consent Order.

173.    As described above, this Court has jurisdiction over this matter and therefore may declare the rights of Plaintiffs.  Plaintiffs therefore seek an order declaring that JPMC's practices in processing illegal garnishments are unlawful and that JPMC is liable to Plaintiffs and the Texas Class for damages caused by that practice.

174.    As to the Washington Consumer Protection Act, a party may seek injunctive relief for violations of the Consumer Protection Act. RCW 19.86.090.

175.    Plaintiffs seek injunctive relief from this Court which would enjoin JPMC from garnishing deposit accounts in the manner described above from the Plaintiffs.

176.    A private plaintiff may also seek injunctive relief. RCW 19.86.090. The purpose of the private right of action is "to enlist the aid of private individuals … to assist in the enforcement of the [CPA]." *Lightfoot v. MacDonald*, 86 Wn.2d 331, 335–36, 544 P.2d 88 (1976). Private consumers may obtain injunctive relief, even if the injunction would not directly affect the individual's own rights. RCW 19.86.090; *Hockley v. Hargitt*, 82 Wn.2d 337, 349–50, 510 P.2d 1123 (1973). Thus, the private right of action serves the public interest by preventing unfair or deceptive practices from continuing unchecked. Hockley, 82 Wn.2d at 350; see also Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 295 P.3d 1179 (2013) (injunction against foreclosure trustee company restored on appeal).

## TRIAL BY JURY

177.    The Pontons and Class members request a jury trial pursuant to Federal Rule of Civil Procedure 38(b).

FIRST AMENDED COMPLAINT 28

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court:

1. Award  such damages as may be proved at a jury trial, against Defendants, jointly and severally in the amount determined by the jury;

2. Declare JPMC's actions to be unlawful;

3. Permanently enjoin JPMC from performing further unfair and unlawful acts as alleged in this complaint;

4. Award equitable damages, mandating that JPMC establish systems, procedures, and internal controls, to prevent illegal garnishments;

5. Award  punitive damages;

6. Award statutory damages and civil penalties;

7. Award damages for diminution of business reputation;

8. Award exemplary damages, and mental anguish damages including treble damages;

9. Award attorneys' fees pursuant to the terms of applicable law;

10. Provide a trial by jury as to all issues so triable;

11. Tax the costs of this action against Defendants; and

12. Award it such other relief as to the Court seems just and proper.


Respectfully Submitted,
    June 21, 2024

/s/ Christina L Henry
Christina L Henry, WSBA 31273
SEATTLE CONSUMER JUSTICE
10728 16th Avenue SW
Seattle, WA 98146
Tel: 206-330-0595 / Fax 206-400-7609
chenry@hdm-legal.com

/s/ Venus Springs
Venus Springs, *Pro Hac Vice*
SPRINGS LAW FIRM PLLC
228 Park Ave S, Ste 54205
New York, NY 10003-1502
Telephone: (704) 241-9995
Email: vsprings@springslawfirm.com

**Attorneys for the Plaintiffs**

FIRST AMENDED COMPLAINT 30