**Honorable Richard A. Jones**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RONALD PONTON, SR., Individually, RONALD PONTON, dba MEXICO MOVING COMPANY, and TOMIKA PONTON, *on behalf of themselves and others similarly situated*, | Case No.: 2:24-cv-248-RAJ |
| Plaintiffs, | **RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT (ECF No. 42)** |
| v | |
| JPMORGAN CHASE & CO. and JPMORGAN CHASE BANK, N.A. | |
| Defendants. | |

Plaintiffs originally brought a class action complaint ("Original Complaint") against Defendants JPMorgan Chase &Co. and JPMorgan Chase Bank, N.A. (collectively "JPMC" or the "Defendants") (ECF No. 1). The Plaintiffs filed a motion to transfer this action to the Southern District of Texas. (ECF No. 4). Defendants opposed the motion to transfer venue (ECF No. 19),  That motion has not been decided. The Defendants filed a motion to stay proceedings pending mandatory individual arbitration. (ECF No. 26). The Plaintiffs filed an opposition to that motion. (ECF No. 36). The Defendants filed a motion to dismiss for failure to state a claim (ECF No. 32). That complaint was amended on June

21, 2024, which mooted that motion. (ECF No. 35). The motion to dismiss the first amended complaint ("FAC") is the subject of this response.

### SUMMARY OF ARGUMENT

The Defendants' motion to dismiss should be denied for the following reasons:

1. Here, Defendants argue that they were obligated to comply with the Washington State Court's February 2022 garnishment order to freeze the Plaintiffs' funds pursuant to RCW 6.27.120(1), without acknowledging their duty to comply with Washington State's complete garnishment law, Federal Constitutional law, and a requirement to inform the Washington State court that it had no jurisdiction to enforce a garnishment upon the Pontons. It is the garnishee's obligation (here the Defendants) to notify the issuing court that the funds sought to be garnished are located in another state, to put the issuing court on notice that the only funds available to garnish are located outside the state and put the issuing court on notice that the exemptions are for the resident of another state. Accordingly, the proper response also would have informed the court that the judgment debtor did not have any attachable funds or accounts within Washington state and that they would thus decline to process the out of state garnishment notice.  That did not happen here.

2. JPMC is part of a single enterprise and thus both defendants are properly part of this action. In fact, the attorney who filed the declaration at ECF No. 29 on behalf of Chase Bank, William Garrett, is registered with the Supreme Court of

Ohio as an employee of the parent company. His written testimony reflects an intimate knowledge of bank deposit operations.

3. After JPMC froze the Ponton's funds in their account and the court denied the TRO motion, the court placed the following on the docket in the Underlying Litigation: "[the trustee] has proposed that "the Court could simply hold the $58,000 in the registry of the Court pending resolution of the parties' dispute" to "preserve the status quo." The Court DIRECTS the parties to discuss this and other ways to **preserve the status quo** while this action proceeds and to file a stipulation if possible. Signed by Judge Ricardo S. Martinez. (SB) (Entered: 03/22/2022)." Case No. C22-307-RSM, (emphasis added). What was the status quo? The Pontons' funds had already been frozen with no Alabama exemption 35 days earlier. Who created the status quo? JPMC. The Court directed that the status quo be maintained throughout the litigation. The Pontons had no choice but to stipulate that JPMC could continue to hold the funds as opposed to sending them to Washington State to allow the Pontons to continue to fight the jurisdiction of Washington State. That order was entered on March 25, 2022 (the "Status Quo Order"). JPMC need not pretend they froze the Plaintiffs' funds because of the Status Quo Order.

4. Washington is indeed a Restriction State because RCW 6.27.080 provides that a writ directed at a financial institution is only effective if it names a particular branch and a writ naming a branch as garnishee defendant shall be effective

only to attach the deposits of the defendant (in the possession or control of the particular branch to which the writ is directed and on which service is made. The writ to the Pontons was defective on its face without the name of the branch. The entire brief of the Defendants is devoid of any analysis of the garnishment statute yet asserts in conclusory fashion that Washington is not a Restriction State.

5.  The Pontons never had Alabama attorneys. The CFPB found it a deceptive practice to process out-of-state garnishment for restriction states and then apply the exemption of the state of the garnishment issuer rather than the state of the debtor's residence. It is undisputed that JPMC acted in a manner that was considered an unfair and abusive practice by the CFPB in the Plaintiffs' case by applying the $500 exemption for the state of Washington instead of the $7500 that was possible for the state of Alabama.

6.  JPMC picked the law that governs the Plaintiffs' account to be Texas.  They cannot therefore ignore that Section 4.103(a) of the Texas Business and Commerce Code provides that a bank cannot limit its measure of damages for its failure to exercise ordinary care.

7.   Texas courts recognize that a customer relationship with an account owner also gives rise to duties imposed on garnishees to guard against injuries occurring due to wrongful garnishment. Indeed, if a garnishee has information in its possession that a garnishment proceeding does not apply to one of its account

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

holders, this knowledge triggers a general duty on it to raise a defense against the garnishment such that a bank will be liable for breach of the Deposit Account Agreement. _Strobach v. WesTex Cmty. Credit Union_, 621 S.W.3d 856, 871 (Tex. App. 2021).

8. The economic loss rule does not apply to the Pontons Texas DTPA, gross negligence, or willful misconduct claims because the claims are not based on the breach of the Deposit Account Agreement but rather on JPMC's separate duties to the plaintiffs that arose 1) out of the examination by the CFPB, OCC, FRB and other federal regulators where they specifically informed the Defendants of their duty toward out-of-state garnishments from Restriction States as that term was defined by the CFPB, 2) from the violation of the CFPA, and 3) after the release of the Consent Order, the Plaintiffs complained to the CFPB explaining their hardship, and JPMC had an additional chance to take action, yet refused to amend its Answer.

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# FACTS

The CFPB examined JPMC along with other large financial institutions during the COVID crisis for compliance with its garnishment requirements. FAC ¶32. On May 4, 2022, the CFPB issued a consent order with another large financial institution by regulatory standards ("Regulated Institution") subject to the same regulatory guidelines as JPMC (the "Consent Order").FAC ¶ 31. The CFPB identified the following law violations: (1) Regulated Institution engaged in unfair acts and practices by responding to and processing garnishment notices against out-of-state bank accounts in violation of certain garnishment-issuing states' prohibitions against out-of-state garnishment; (2) Regulated Institution engaged in unfair acts and practices by failing to apply the appropriate state exemptions to certain consumers' deposit accounts after receiving garnishment notices; (3) Regulated Institution engaged in deceptive acts and practices by misrepresenting to consumers, by implication, the applicable state exemption rights for garnishment by applying the issuing state's exemptions instead of the exemptions of the consumer's state of residence, where the states of issuance and residence differ; (4) Regulated Institution engaged in unfair acts and practices by using a deposit agreement that required consumers to waive Regulated Institution's liability for its unlawful garnishment conduct; and (5) Regulated Institution engaged in deceptive acts and practices by suggesting consumers could not bring legal claims misrepresenting consumers' legal rights regarding garnishment proceedings, all in violation of Sections 1031(a) and 1036(a)(1)(B) of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a) and 5536(a)(1)(B). FAC ¶ 33.  JPMC has engaged

in all of the above unlawful practices. FAC ¶ 34. Chase Bank has ongoing examinations by the CFPB, and JPMC was fully informed of the requirements set forth for garnishments by the regulatory agencies including being under a previous Matters Requiring Attention. FAC ¶65.

The Plaintiffs were Alabama residents at all relevant times. FAC ¶36.  The Pontons opened a personal checking account in Illinois FAC ¶37. Ronald Ponton Sr. opened a small business account as a "doing business as" account for MMC in Texas in 2013. FAC ¶41. The Pontons opened a personal savings account in Texas in 2013. FAC ¶42.  Prior to 2009, Ronald Ponton and Tomika Ponton were victims of fraud by LLS America, LLC ("LLS America"). They filed a proof of claim in a bankruptcy filed by LLS America in the Eastern District of Washington. FAC ¶45. LLS America trustee, Bruce Kriegman then filed adversary actions against the Pontons claiming they were net winners in a Ponzi scheme, and obtained a default judgment against them in the Eastern District of Washington in 2015 while they were missionaries in Mexico. FAC ¶46. Trustee Kriegman, a Seattle resident, then took the judgment and filed it as a foreign judgment in state court in King County, Washington. FAC ¶47.  On February 10, 2022, the trustee applied for a Writ of Garnishment with the Clerk of the Superior Court of Washington for King County in the amount of $120,670.59. FAC ¶ 48. On February 11, 2022, the trustee's attorneys mailed the Writ of Garnishment to JPMC. The writ was mistakenly written for Ronald Ponton Jr not Sr and Tomika Ponton. FAC ¶49. On February 22, 2022, JPMC froze the funds in three of the Ponton's accounts, two personal accounts, and one business account for a total of

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

$58,448.88. FAC ¶51. On February 22, 2022, JPMC mailed a letter to the Pontons telling them that federal or state law required them to immediately place a hold on their Chase Bank accounts. FAC ¶52 That letter provided that the funds would be held until the expiration date of the hold, if there was one, or the funds were sent to the issuer. FAC ¶54. JPMC mailed its answer to the Writ on or around March 2, 2022. JPMC did not use the specific form of answer that was requested by the Writ nor did it provide a response under oath as required by Washington law. FAC ¶55. JPMC did not notify the issuing court that the relevant deposit accounts were not located in the state from which the garnishment notice was issued. FAC ¶57. As Alabama residents, the Pontons were entitled to a $7500 exemption from garnishment. JPMC granted the Pontons the $500 exemption entitled to Washington state residents. FAC ¶59.

JPMC did not provide any disclosure to the Pontons that would provide them with notice of their rights to elect an exemption under Alabama law or the process by which to elect any exemptions other than the exemption that was entitled to Washington state residents. FAC ¶60. The Pontons operate a small business that involves moving people who are relocating into or out of Central America. FAC ¶61. Customers regularly access the Chase Bank MMC small business account. FAC ¶61.  A person who is employed could hope for a new paycheck in the next two weeks. FAC ¶63. The Pontons being self-employed and their business and personal accounts being emptied, were financially devastated. FAC ¶63. On the day JPMC froze the Pontons account, the Pontons' clients had deposited $14,881.36 in funds in the MMC account. FAC ¶64. Chase Bank left the Pontons in a

desperate situation, unable to return client funds and unable to fulfill obligations to their clients under contract. FAC ¶64. When the Plaintiffs' funds were frozen, they requested a release from JPMC, and no relief came. FAC ¶66. The Plaintiffs then tried to obtain an attorney in Washington. FAC ¶66. They tried to obtain an attorney with legal aid in Washington state and they could not get an attorney because they were not Washington state residents. FAC ¶67. The Plaintiffs tried to obtain an attorney in Alabama but they could not find nor afford an Alabama attorney to litigate in the state of Washington. FAC ¶67. They tried Alabama legal aid but Alabama pro bono attorneys only work within the state of Alabama. FAC ¶67. The Plaintiffs tried to file bankruptcy in Alabama; however, the Plaintiffs were told that they were not qualified to file bankruptcy and that the Alabama attorney would not proceed with a bankruptcy action. FAC ¶68. Eventually, the Plaintiffs only found New York attorneys who were willing to help the Plaintiffs. FAC ¶69. The New York attorney contracted with a Washington State local counsel. FAC ¶69. The Plaintiffs incurred tens of thousands in unnecessary legal fees paid on their credit cards. FAC ¶70. The Plaintiffs paid high interest rates. JPMC did not release the Plaintiffs' funds of $58,448.87 until December 2022. FAC ¶70. JPMC had a duty to determine which states were Restriction States as the CFPB Consent Order specifically said the list was not exclusive and regulated institutions had to determine the list for themselves. FAC ¶71. In Washington State, it is undisputed that the situs of the bank account is the domicile of the owner. FAC ¶71. In Washington State it is also not in dispute that RCW 6.27.080 Writ directed to financial institution—Form and service; provides the following;

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

> A writ naming the financial institution as the garnishee defendant shall be effective only to attach deposits of the defendant in the financial institution and compensation payable for personal services due the defendant from the financial institution. A writ naming a branch as garnishee defendant shall be effective only to attach the deposits, accounts, credits, or other personal property of the defendant (excluding compensation payable for personal services) in the possession or control of the particular branch to which the writ is directed and on which service is made.
> A writ of garnishment is effective against property in the possession or control of a financial institution only if the writ of garnishment is directed to and names a branch as garnishee defendant. FAC ¶71.

The CFPB stated that the list of Restriction States in its order was not exclusive. JPMC had a duty to research and make a determination for itself which states are Restriction States. FAC ¶72.  JPMC had a duty to amend its Answer to the writ of garnishment in the Pontons' case even if it made an error in the initial Answer. FAC ¶72.  JPMC has a practice of amending garnishment answers for its benefit. FAC ¶73. JPMC has several times declined to obey a court order regarding a garnishment when it has decided it was in its best interests to decline to obey. FAC ¶74. JPMC has amended Answers to garnishments to correct errors for only its own benefit for example when it wanted to ensure funds were available to pay monies due to JPMC and its affiliates but it did not do so for the garnishment that affected the Plaintiffs. FAC ¶75. For example, in *Guy M. Turner Incorporated v. KLO Acquisition LLC*, JPMC filed a motion for leave to amend its answer on November 3, 2020, over a year after its original answer and after the default judgment was entered against the debtor-garnishee. 869 S.E.2d 755, 757, 281 N.C.App. 504, 506, 2022 -NCCOA- 53, ¶ 4

(N.C.App., 2022). The Guy M. Turner Court granted JPMC's request, ultimately resulting in JPMC avoiding the garnishment. *Id.*

The Plaintiffs have suffered damages to their business and their reputations. FAC ¶77. By way of example, the process of opening, attempting to open, and moving the numerous accounts is laborious and expensive. Further, the interference with banking relations has caused the Plaintiffs to lose customers who rely on the Plaintiffs' banking account to assist with obtaining international moving services. *Id.*

## STANDARD OF REVIEW

In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor. Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If the Court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend. *3M Co. v. AIME LLC*, No. C20-1096 RAJ, 2021 U.S. Dist. LEXIS 235316, at *4 (W.D. Wash. Dec. 8, 2021) citing *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

**ARGUMENT**

**I.      The Complaint Adequately Alleges JPMorgan Chase& Co Is Not Just a Holding Company But Made the Policy Decisions and Employed the People That Caused the Harm Against the Plaintiffs.**

The plaintiff argues a single or integrated enterprise theory of liability for the defendants.  See e.g. _Henry v. IAC/Interactive Grp._, No. C05-1510RSM, 2006 U.S. Dist. LEXIS 80307, at *9 (W.D. Wash. Nov. 2, 2006); See also _Sakrete, Inc. v. N.L.R.B._, 332 F.2d 902, 905 n. 4 (9th Cir. 1964), _cert. denied_, 379 U.S. 961, 85 S. Ct. 649, 13 L. Ed. 2d 556. JPMorgan Chase's own registration statements publicly establish factors that support a unitary enterprise and the plaintiff has alleged those facts in the FAC. The attorney, William A Garrett who filed a declaration (ECF No. 29) swearing under oath that he was the Executive Director and Assistant General Counsel for JPMorgan Chase Bank, N.A. instead lists his employer as JPMorgan Chase & Co (the parent company) with the Supreme Court of the State of Ohio, the regulator of Ohio licensed attorneys. [1]. How shall we know which is true, the declaration filed for the purpose of winning a motion or the disclosure filed with his attorney registration? In any event, if they are interchangeable to him, it shows the nature of the enterprise.  In that declaration, he states he has "access to information in the normal course of business regarding certain of JPMC's banking operations and practices. . . . and documents relating to JPMC deposit accountholders,

---

[1] https://www.supremecourt.ohio.gov/AttorneySearch/#/38986/attyinfo

**SEATTLE CONSUMER JUSTICE**
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

including Plaintiffs". His declaration alone supports the inclusion of JPMorgan Chase as a defendant.

The Defendants misrepresent that the Plaintiffs' only argument for JPMorgan Chase's liability is "an allegation that the DAA "had the name as the owner at the bottom of the agreement" ECF 42 pp. 8-9. However, both complaints are replete with allegations of a basis for single enterprise liability.

> 19. Based on JPMorgan Chase's legal filings, the company, along with its divisions and subsidiaries, is operated as one united organization, and financial statements are consolidated and reported as one entity among its various subsidiaries.
> 20 JPMorgan Chase is a registered bank holding company that owns and controls Chase Bank, other U.S. insured depository institutions, Edge Act corporations organized under section 25A of the Federal Reserve Act (12 U.S.C. § 611 et seq.), and nonbank subsidiaries around the world.
> 21 JPMC has adopted an enterprise-wide risk management, compliance, and audit program designed to identify and manage risks across the consolidated organization.
> 22. Because JPMC operates as one united enterprise and the holding company controls Chase Bank and advertises on registration statements filed with the United States Securities and Exchange Commission, to the public and to regulators in this manner, it has enterprise liability. FAC ¶¶19-22

It is the parent company that employs the attorneys that set the garnishment policies, develops the internal controls, and determines which actions answers are filed.

The Defendants cite cases in New York where plaintiffs include New York-based JPMorgan Chase as a defendant, solely to get state court jurisdiction. In *E.J. Chin Realty Corp.* the plaintiffs were New York citizens and the complaint did not allege any jurisdictional facts. *E.J. Chin Realty Corp. v. JP Morgan Chase Bank, N.A.*, 2024 U.S.

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

Dist. LEXIS 10868, at \*1-2 (S.D.N.Y. Jan. 22, 2024). The court only learned of the parent company's relationship from the Corporate disclosure. That case is not at all similar to the case here, where jurisdictional facts are completely disclosed and there was no jurisdictional benefit to including JPMorgan Chase in the complaint.

The Defendants confuse joint enterprise liability among unrelated parties with single enterprise liability among related parties but the same principles apply and Texas and Illinois recognize both. superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer. Factors considered in determining whether distinct entities constitute an integrated enterprise are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. _Trevino v. Celanese Corp._, 701 F.2d 397, 404 (5th Cir. 1983). In _Trevino_, the relevant decision-makers were employees of the parent company and former employees of one entity testified they considered themselves _de facto_ employees of the other. _Reilly v. TXU Corp._, No. 3:05-CV-0081-M, 2009 U.S. Dist. LEXIS 26522, at \*9 (N.D. Tex. Mar. 31, 2009). The determination of whether the corporate fiction should be disregarded is a fact question for the jury. It is a fact-specific determination made on a case-by-case basis. _Harwood Tire-Arlington v. Young_, 963 S.W.2d 881, 884 (Tex. App. 1998),

Where a holding company directly intervenes in the management of its subsidiaries so as to treat them as mere departments of its own enterprise, it is responsible for the obligations of those subsidiaries incurred or arising during its management. "A holding

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

company which assumes to treat the properties of its subsidiaries as its own cannot take the benefits of direct management without the burdens". *Forsythe v. Clark USA, Inc.*, 361 Ill. App. 3d 642, 643, 297 Ill. Dec. 119, 120, 836 N.E.2d 850, 851 (2005).   See also *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072 (9th Cir. 2019), *as amended on denial of reh'g and reh'g en banc* (May 6, 2019) ("whether an agency relationship exists is for a court to decide based on an assessment of the facts of the relationship and not based on how the parties define their relationship") (citing Restatement (Third) of Agency § 1.02).

## II.   JPMC Had an Obligation to Inform the King County Superior Court That it Did Not Have Jurisdiction to Garnish Accounts With a Situs Outside of Washington State.

In quoting *Maness v. Meyers*, 419 U.S. 449, 459 (1975), the Defendants gloss over a most important word, "jurisdiction" - 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties." *Id.* To lawfully garnish a bank account, a state court must have jurisdiction over the garnishee (the bank that holds a deposit account) and the property to be garnished (the deposit account). Additionally, Bank account garnishments are governed by state law, with Washington State requiring a garnishee to answer a writ of garnishment. *See* RCW 6.27.190.

JPMC is and always has been (even before February 2022) required to comply with Sections 1031(a) and 1036(a)(1)(B) of the Consumer Financial Protection Act of 2010

("CFPA"), 12 U.S.C. §§ 5531(a) and 5536(a)(1)(B)[2]. JPMC knows its duties as a garnishment bank not to act negligently because it was specifically informed of these duties by the CFPB during the regulatory examination in 2020 and it was informed by courts of law. *See, e.g., JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II*, 508 S.W.3d 391, 425 (Tex. App.—Fort Worth 2014, no pet.) (specifically informing Chase Bank as the garnishee bank that it breached the duty to its customer to defend against a writ of garnishment that did not name its customer as a judgment-debtor, where it had actual knowledge that its customer was not the named judgment-debtor in the underlying suit, but released the funds to the garnishor anyway).

In *Strickland v Alexander* JPMC is on the other end of the stratosphere arguing that it is not a state actor because it has the choice not to obey the garnishment order. JPMC was personally instructed by the court in *Strickland v Alexander* of ways to protect itself against liability and it took none of those options in this case. JPMC thus knew or should have known what was required and it had a duty to revise its procedures accordingly.

"In light of this risk of liability, Chase had another option under Georgia's garnishment procedure, even though the summons did not advise Chase of this option. If Chase was unable to describe or state what money was subject to garnishment, Chase

---

[2] Sections 1031(a) and 12 U.S.C. §§ 5531(a) and 5536(a)(1)(B) allow the CFPB to take actions to prevent a covered person from committing unfair, deceptive and abusive practices in connection with a consumer product or service.

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

could have submitted an answer to the court saying as much, "together with all the facts plainly, fully, and distinctly set forth," and let the court decide which money in Chase's possession was subject to garnishment. See O.C.G.A. at § 18-4-82(a); Mobile Paint Mfg. Co., 219 Ga. App. at 300 (after finding garnishee bank liable because the bank's determination that an account was not subject to garnishment was in error, explaining that if the bank was unsure what funds in the account qualified for garnishment, the bank should have filed an answer stating such). This section of the garnishment law has been recognized by the Georgia Court of Appeals as the proper path for a garnishee to take when the bank does not know whether the funds on deposit are subject to garnishment. Under this scenario, Chase would have fully discharged its legal obligation without exposing itself to liability. Therefore, despite the language of the summons requiring Chase to determine the exemptions, Chase could have chosen not to do so and allowed the court to determine which funds should be garnished. *Strickland v Alexander* 2013 WL 12053126 *12-13 1:12-CV-02735 (N.D.G.A. April 11, 2013).

Defendants cite *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, In*c., 719 F.3d 601 (7th Cir. 2013) in support of their argument that it is the court order that is to blame for the Ponton's damages and not their actions. That case involves a Michigan garnishment. In J*ohnson*, Sherman and his medical practice filed suit against Sherrod and her medical practice in the Wayne County Michigan Circuit Court. Id. The Circuit Court entered a judgment against Sherrod. In 2010,  Sherman filed a writ of garnishment on

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

Sherrod's accounts at Merrill Lynch. *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601, 602 (7th Cir. 2013). Merrill Lynch warned Sherman in its answer that it could not freeze or otherwise restrain or liquidate" the assets of the Plan. *Id at*, 602-03 (7th Cir. 2013). Did JPMC take that same affirmative step in its Answer? No, instead it froze the Pontons' assets. Although Merrill Lynch did not believe that it could exercise control over the Plan, the Wayne County Circuit Court believed that it could. *Id*. In 2011, the Circuit Court judge issued a blanket freeze order. *Id* at. 603 (7th Cir. 2013). As a result, Merrill Lynch froze the Plan account with respect to Sherrod only. *Id*. Moreover, when the Plan administrator filed a motion to quash the garnishment proceeding with respect to the Plan account, Merrill Lynch supported the Plan administrator. *Id*. Did JPMC Join in and support the Pontons' motion to quash the garnishment? No, they did not. Then Johnson sued Merrill Lynch for freezing the Plan account. *Id*. The Johnson court holding was "Because we find that the Plan administrator lacks Article III standing to bring the present suit, we need not address Merrill Lynch's ripeness argument. (Nevertheless, we note in passing that, given Merrill Lynch's continual support of the Plan administrator's position in the Michigan courts, we have a difficult time perceiving an actual dispute between the parties." *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601, 607 (7th Cir. 2013). Is this a situation where JPMC has supported the Pontons by every possible means such that the rules of equity made it unjust for the garnished debtor to go after the garnishee? By no means. JPMC is nothing like Merrill Lynch's Plan Administrator. See ECF No 42 p.10.

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**III.   The Defendants Completely Fail to Analyze Washington State Law to Refute Plaintiff's Arguments that Washington is a Restriction State.**

Moreover, as the Plaintiffs allege that Washington is a Restriction State, failure to abide by federal regulations regarding garnishment renders their hold of the Plaintiffs' funds unfair and deceptive. The plaintiffs are not confusing the states of Alabama and Washington. Defendants are getting hung up on the fact that Alabama is one of the enumerated states simply because the Pontons are from Alabama but the Plaintiffs are not confused. Paragraph 71 of the FAC reads; " JPMC had a duty to determine which states were Restriction States as the CFPB Consent Order specifically said the list was not exclusive and regulated institutions had to determine the list for themselves." The CFPB Consent Order "Restriction State" is a State that prohibited or otherwise restricted garnishment of Out-of-State Accounts, at the time Respondent was served with or acted upon an Out-of-State Garnishment Notice issued from that State. Restriction States *include but are not limited to* Alabama, Arizona (before August 2019), California, Florida (after August 2014), and Oregon. Consent Order, p.6. The only place where Washington law is addressed in their brief is footnote 4. In footnote 4, the Defendants misrepresent that Judge Martinez already ruled as to what RCW 6.27.080 meant in the Underlying Litigation, ECF No. 28 on April 25, 2022. However, on October 20, 2022, Judge Martinez Ordered Certification to the Washington Supreme Court on the meaning of that Statute certifying the question "Under RCW 6.27.080, does a Washington writ of garnishment directed to a financial institution that has locations throughout the United States attach to a judgment debtor's bank accounts where the situs is in another state?" ECF 44. P 4. Defendants argue that Alabama does not require banks to automatically apply Alabama exemptions on behalf of the consumer; the consumer must affirmatively apply for them by filing a sworn declaration. ECF 42 at 12. It cites some portions of the Alabama Code

(§ 6-10-6, § 6-10-20, § 6-10-23). However, no legal analysis is done. The code provisions provide general exemptions. Neither of those code provisions determines the duties of national banks in garnishments.  They are not Alabama's garnishment laws and they do not address what notices are provided in garnishments of exemptions. The 11th Circuit precedent holds that due process requires notice to the bank account holder of its exemption rights in a garnishment. *Strickland v. Alexander*, 772 F.3d 876 (11th Cir. 2014). Moreover, the funds must be conserved in the account to allow the person time to claim the exemption.  The CFPB has determined that it is an unfair and deceptive practice for a National Bank not to apply the exemptions of its state of residence when it receives an out-of-state garnishment from a Restriction State and that it informed JPMC and all of its largest regulated institutions of this fact in 202 according to the well-pleaded facts of the complaint and the CFPB's website. See FAC ¶¶31-34; 71-73. "The purpose of the exemption laws is to protect the debtor and his/her family from being deprived of the items necessary for subsistence and possibly to prevent them from becoming a burden upon the public." *Broadway v. Household Finance Corp. of Huntsville*, 351 So.2d 1373 (Ala.Civ.App.1977). "In the context of the garnishment and exemption laws, courts of this state should be concerned with the rights of the debtor, as the creditor is almost always in a better position to protect its interests." *Ex parte Avery*, 514 So.2d 1380, 1382 (Ala.,1987). The CFPB Consent Order indicates that "even if a Restriction State's procedural requirements allow Consumers to object to a Garnishment Notice, it is not reasonable to expect Consumers to have the necessary understanding of the reach of Garnishment Notices issued from states that limit or restrict out-of-state garnishment and any rights they may have to object to them to avoid the harm." (Consent Order p.16).

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

1
2

**IV.    The Violations of the Texas DTPA Are Adequately Pled and Not Barred By The Economic Loss Rule Because the Tort Claims Arise Out of Duties Independent of The Deposit Account Agreement.**

3

The Texas DTPA allegations are in sufficient detail in the complaint culminating

4

in paragraphs 79-98. The economic loss rule does not bar all tort claims arising out of a

5

contractual setting. In *Chapman Custom Homes, Inc.*, the Supreme Court of Texas stated

6
7

that "a party [cannot] avoid tort liability to the world simply by entering into a contract

8

with one party [otherwise the] economic loss rule [would] swallow all claims between

9

contractual and commercial strangers." 445 S.W.3d at 718 (quoting *Sharyland Water*

10

*Supply Corp. v. City of Alton*, 354 S.W.3d 407, 419 (Tex. 2011)). Therefore, "a party

11
12

states a tort claim when the duty allegedly breached is independent of the contractual

13

undertaking and the harm suffered is not merely the economic loss of a contractual

14

benefit."  *Id.; see LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 242-43 (Tex.

15

2014).  Outside of the contract, the plaintiff alleges separate duties to the plaintiffs

16
17

independent of the deposit account agreement arose 1) out of the examination of the

18

CFPB, OCC, FRB, and other federal regulators where they specifically informed the

19

Defendants of their duty toward out-of-state garnishments from Restriction States as that

20

term was defined by the CFPB (FAC 32, 122-124)  and after the Plaintiffs complained to

21

the CFPB in July 2022 about the garnishment and JPMC had an additional opportunity

22
23

to amend the Answer, yet refused (FAC 166) and 3) when JPMC still refused to amend

24

its Answer and this despite having a copy of the May 4, 2022, Consent Order. (167)  It

25

cannot be denied that the Plaintiffs plead in detail the who, what, when, where, how, and

26

timing in the operative complaint. Paragraph 89 pleads specific reliance. "In contrast to a fraud cause of action, the DTPA does not require proof of justifiable reliance; rather, the DTPA simply requires that the consumer's detrimental reliance**.** _Jasek v. Tex. Farm Bureau Underwriters_, No. 14-19-00759-CV, 2022 Tex. App. LEXIS 898, at *8 (Tex. App. Feb. 8, 2022).

Concerning the claims that JPMC's DAA is different than Bank of America's, it is evident from the quotations in the Defendant's brief that JPMC's DAA suffers from the same deformities. JPMC does in fact tell the consumers that they have waived all of JPMC's legal liability for JPMC's actions in the DAA.  See ECF 42 p 23  JPMC's DAA language that says consumers "specifically authorize JPMC to comply with the legal process" is the functional equivalent to BOFA's DAA that says consumers direct BOFA not to contest the legal process." "JPMC cannot be held liable for indirect, special, or consequential damages, no matter how the claim is characterized." (But See ECF 42 p12 where Defendants claim their DAA "literally contains no such language" waiving liability for JPMC's actions regarding all legal process"). Fortunately, the Texas Code does not allow such waivers. The harm is alleged in specific detail in paragraphs 95 and 96 of the operative complaint.

**V.      The Common Law Gross Negligence and Willful Misconduct Actions Arise Not From the Contract But Again from the Separate Duty that Arises From JPMC's Actions In Either Intentionally Acting Against the Ponton's Interests After Notice or In Reckless Disregard of Their Rights.**

Gross negligence includes two elements: (1) viewed objectively from the actor's standpoint, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994). Under the first element, "extreme risk" is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff. See Universal Servs. Co. v. Ung, 904 S.W.2d 638, 641 (Tex. 1995); Moriel, 879 S.W.2d at 22-23.  Under the second element, actual awareness means that the defendant knew about the peril, but its acts or omissions demonstrated that it did not care. *See Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex. 1993). Circumstantial evidence is sufficient to prove either element of gross negligence. *See Moriel*, 879 S.W.2d at 22-23.

The Texas Supreme Court has more recently opined that willful misconduct is "short of genuine intentional injury." <u>*Apache Corp. v. Castex Offshore, Inc.*, 626 S.W.3d 371, 381 (Tex. App. 2021)</u>. a plaintiff can show that a defendant is liable for willful misconduct if the evidence establishes that the defendant intentionally or deliberately engaged in improper behavior or mismanagement, without regard for the consequences

**SEATTLE CONSUMER JUSTICE**
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

of his acts or omissions. *Apache Corp. v. Castex Offshore, Inc.*, 626 S.W.3d 371, 381 (Tex. App. 2021).

At this stage, where the allegations must be taken as true, the plaintiffs have adequately pled gross negligence and willful misconduct. The economic loss rule is addressed in Section IV supra.

**VI.     Texas Courts Have Found Liability for Breach of Contract Claims Against Banks for Failure to Exercise Good Faith and Reasonable Care in Garnishment Actions.**

Paragraphs 117 -131 allege JPMC breached the contract by failing to make funds available to plaintiffs on demand pursuant to the DAA and the Funds Availability Policy. The writ of garnishment on its face did not comply with Washington State law. JPMC had full use of the funds for investment purposes and charged fees on the funds to the plaintiffs.  The DAA provides no reasonable basis for placing a hold on the Plaintiffs' funds without providing the Alabama state exemption. Further, even if the Deposit Agreement were to provide for a hold on all the funds at the time except $500, such hold as employed by JPMC in this matter was beyond any reasonable time or commercial standards of fair dealing.

In Strobach, WesTex argued that it was relieved of liability when acting in a manner as provided by law, and that it could not be held liable for any losses resulting from the fact that her account was subject to legal process or other claim. *Strobach v. WesTex Cmty. Credit Union*, 621 S.W.3d 856, 874 (Tex. App. 2021).  WesTex contended

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

the court should find that it exercised ordinary care under the deposit agreement terms, as a matter of law, *Strobach v. WesTex Cmty. Credit Union*, 621 S.W.3d 856, 874-75 (Tex. App. 2021). Strobach contended that a question of fact existed on the issue of whether WesTex failed to exercise ordinary care when failed to ensure the validity of the underlying judgment, characterizing the proceeding as a "patently wrongful garnishment upon a patently false affidavit upon a consent judgment containing patently false material representations to the trial judge. And the court agreed. *Strobach v. WesTex Cmty. Credit Union*, 621 S.W.3d 856, 875 (Tex. App. 2021)

"Aside from the statutory duties of garnishment, as Strobach points out here, courts recognize that a customer relationship with an account owner also gives rise to duties imposed on *garnishees to guard against injuries occurring due to wrongful garnishment.* Indeed, if a garnishee has information in its possession that a garnishment proceeding is not applicable to one of its account holders, this knowledge triggers a general duty on it to raise a defense against the garnishment." *Strobach v. WesTex Community Credit Union*, 621 S.W.3d 856, 871–72 (Tex.App.-El Paso, 2021). Thus, Defendants' argument that JPMC could simply do nothing because it was just obeying a garnishment order has failed repeatedly as an insulation against liability for breach of contract.

The Defendants state in footnote 6 that "the plaintiff's citation to § 4.103(a) of the Texas Business and Commercial Code, which is in Article 4 of the Uniform Commercial Code (FAC ¶ 78), is simply inapplicable." Notably, the Defendants have no citation. However, Texas courts hold otherwise as set forth below:

"The Court agrees with Plaintiffs. Although the Texas Business and Commerce Code allows parties to vary the agreement, it expressly states that "the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary *or limit the measure of damages for the lack of failure*." Tex. Bus. & Comm. Code § 4.103(a) (emphasis added). The Court finds that the waiver provision in the DAA attempts to waive the damages that JPMC could incur, and thus, could violate Texas public policy if the bank is disclaiming responsibility for its own lack of good faith. *See Am. Airlines Emp. Fed. Credit Union v. Martin*, 29 S.W.3d 86, 95 (Tex. 2000) ("Section 4.103(a) permits parties to vary the effect of Article 4's provisions by agreement, as long as that agreement does not 'disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care,' or 'limit the measure of damages for such lack of failure."). Therefore, the Court finds that Defendant's motion for summary judgment as to the waiver of consequential damages is denied.

*Sting Soccer Operations Grp. LP v. JP Morgan Chase Bank, N.A.*, No. 4:15-CV-127, 2016 U.S. Dist. LEXIS 94726, at *41-42 (E.D. Tex. July 20, 2016)

## VII.   The Defendants Contract State the Account is in Illinois So the Activity Occurred in Illinois.

Defendants argue that the "Plaintiffs' claim fails because an ICFA claim lies only if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." ECF 42 p 19.  Yet the plaintiffs' account is in Illinois so this provision applies to the plaintiffs' account.  The case cited by the Defendants was a class action where the court held that those policyholders whose vehicles were not assessed

and repaired in Illinois could not be part of the class under the IFCA claim. _Avery v. State Farm Mut. Auto. Ins. Co._, 216 Ill. 2d 100, 109, 296 Ill. Dec. 448, 457, 835 N.E.2d 801, 810 (2005). Defendants have not analyzed whether Illinois law would invalidate the contract provision. If the court finds that the IFCA does not apply to the account, the Washington CPA will apply to that account and the plaintiffs have pled that in the alternative. The Defendants' remaining arguments are repetitive and without merit.

**VIII. The Washington CPA Claim is Not Preempted -- the CFPB Does Not Specifically Regulate, Prohibit, or Permit the Garnishment Actions Through the Consent Order in Question.**

Relying on _Vogt v. Seattle-First Nat'l Bank_, 117 Wn. 2d 541, 551 (1991) (citing RCW 19.86.170), JPMC asserts that the challenged conduct that is already "prohibited [or] regulated… by a [federal] regulatory body or statute" cannot be the basis of a CPA claim. ECF 42, p. 21. Under 19.86.170, actions under the CPA are exempt or preempted when they are otherwise permitted, prohibited, or regulated under laws administered by ... any other regulatory body or officer acting under statutory authority of ... the United States. RCW 19.86.170. RCW 19.86.170 does not exempt actions or transactions merely because they are regulated generally. The exemption applies only if the particular practice is specifically permitted, prohibited, or regulated. Vogt v. Seattle-First Nat. Bank, 117 Wash. 2d 541, 552, 817 P.2d 1364, 1370 (1991). It is quite contradictory for the Defendants to say they don't have to comply with the Consent Order and then argue that it is a specific regulation worthy of federal preemption because if it were, there would be no question whether or not the Defendants would have to comply with it.

**SEATTLE CONSUMER JUSTICE**
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

The Washington Legislature enacted the Consumer Protection Act to protect consumers against unfair or deceptive practices and they intended that the Act be liberally construed to serve its intended purpose. *See Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 40, 204 P.3d 885, 891 (2009); RCW 19.86.920. To serve the CPA's intended purposes, courts must narrowly construe the scope of the exemption provisions of the CPA. *See Vogt*, 117 Wn.2d at 552, 817 P.2d 1364. In *Vogt,* the court reversed the dismissal of an unfair or deceptive practices claim against a bank acting as a trustee because the bank's alleged actions were not "specifically" permitted by federal laws under RCW 19.86.170; *Vogt,* 117 Wash.2d at 553–54, 817 P.2d 1364. In light of the guidance in *Vogt*, the Consent Order in this case could not possibly be an example of a statute "permitted, prohibited, or regulated" by another agency. An example of "specifically regulated "is the Federal Benefits Garnishment Rule which still is not completely preempted as specifically addressed by the OCC within the rule. 76 FR 9939, 9948-9949.

The Supreme Court's recent May 30, 2024  decision in Cantero v. Bank of America stresses that national banks remain subject to state laws governing their daily course of business, such as generally applicable state contract, property, and debt collection laws. *Cantero v. Bank of Am., N.A.*, 144 S. Ct. 1290, 218 L.Ed.2d 664 (2024).

**SEATTLE CONSUMER JUSTICE**
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

IX.     **The Conduct of JPMC Was Extreme Given That They Were Specifically Warned by Regulators and They Maliciously Continued Knowing the Detrimental Consequences They Were Inflicting on the Pontons**

Defendants allege that the Plaintiffs cannot ever plausibly assert the required elements of this claim because they caused their alleged damages.  ECF 42 p 22.  The plaintiffs allege that JPMC went through an examination and was specifically informed that 1) freezing depositor funds for out-of-state garnishments was an unfair and deceptive practice; 2) there was no jurisdiction for courts to enforce such an order in Restriction States and 3) the states of residence govern the exemptions and 4) that consumers had no means to learn of exemption rights if JPMC did not properly answer garnishments and inform courts that the funds were not in the garnishor's state. JPMC had been repeatedly told in various litigations by both federal and state courts that it had a duty to the depositor to file an answer that reflected a dispute as to the funds or proper exemption. JPMC received a garnishment for the Pontons that was facially invalid, missing the branch information, and for a state different from the Pontons' state of residence. JPMC froze the Pontons' funds without consideration of the validity of the garnishment because it had a contract that relieved it of all liability.  JPMC filed an Answer listing the accounts as frozen and did not dispute the funds availability in Washington State.  This caused great hardship to the Plaintiffs that just had over $14,000 deposited into the account of a client's funds. The Pontons were forced to consider bankruptcy. The Pontons had no source of income, no working capital to run their business, and no means to hire an attorney. The Pontons could not operate their business,

**SEATTLE CONSUMER JUSTICE**
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

lost clients, and had to repay clients who deposited money that was now frozen. Then even after the Consent Order became public, the Pontons filed a complaint with the CFPB, JPMC wrote a response telling them that the garnishment was valid and refused to amend the Answer that they knew was false. At the same time, JPMC is amending an Answer in another garnishment for its own benefit in another court. The Pontons experience panic, anxiety, outbursts of crying, and pain with physical manifestations. Discovery is needed into the extent of JPMC's extreme conduct. JPMC benefits from frozen funds because they collect interest and can use the funds for investment, and collect transaction fees, even while the customer cannot use the funds. Is knowing that you are collecting interest on $60,000 of someone else's money and that if you just gave them access to $6500 more of it – that they are legally entitled to, they might be able to pay their bills, eat for the week, seek medical treatment and you refuse because you don't care outrageous conduct? "Although the elements of the tort are questions of fact for the jury, the Court must initially 'determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability.' *Sergeant v. Bank of Am., N.A.,* No. C17-5232 BHS, 2018 WL 1427345, at *5 (W.D. Wash. Mar. 22, 2018) (quoting *Dicomes v. State*, 113 Wn.2d 612, 630 (1989)).

## X.   Declaratory Judgment and Injunctive Relief are Appropriate

The FAC sufficiently alleges a controversy upon which the Court can grant injunctive relief under 28 U.S.C. § 2201 and for injunctive relief under Section 17.50 of the Texas Business and Commerce Code, the Illinois Consumer Fraud Act (CFA), 815 ILCS 505/10a, and RCW 19.86.090. FAC ¶¶ 98, 151, 162, 169-176.

**SEATTLE CONSUMER JUSTICE**
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

The available forms of relief in a private CPA action include injunctive relief. RCW 19.86.090. The circumstances in which an injunction is available are specified, and they do not require a showing of irreparable harm. The CPA supports the conclusion that injunctive relief is available under the CPA even if the "plaintiff could be made whole by a money judgment." *Hockley v. Hargitt,* 82 Wn.2d 337, 349-50 (1973) ("By the very language of the statute, plaintiff may obtain injunctive relief in addition to recovering actual damages" and enjoining future violations is appropriate "even if such violations would not directly affect the individual's own private rights."). Under the CPA, a plaintiff "may bring a civil action ... to enjoin further violations, to recover the actual damages ..., or both, together with the costs of the suit, including a reasonable attorney's fee." RCW 19.86.090. In the Eleventh Circuit, a bank account holder whose accounts contained funds that were exempt from garnishment had standing to seek declaratory and injunctive relief against a county clerk of court even after the funds were returned because the account holder alleged sufficient facts to demonstrate a substantial likelihood that he would suffer future garnishment proceedings under Georgia's post-judgment garnishment statute, O.C.G.A. § 18-4-60 et seq., and the court clerk was responsible for processing garnishments. <u>*Strickland v. Alexander*, 772 F.3d 876, 878 (11th Cir. 2014)</u>. The action was not mooted when the account holder received his previously garnished funds from the state court because the "capable of repetition, yet evading review" exception applied. *Id.*

SEATTLE CONSUMER JUSTICE
10728 16TH AVENUE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

## CONCLUSION

For the reasons stated above, the motion to dismiss the First Amended Complaint should be denied. If the Court finds any allegations to be deficient, the Plaintiffs request leave to amend the complaint.

> I certify that this memorandum contains <u>8388</u> words, in compliance with the Local Civil Rules.

Respectfully Submitted,
July 24, 2024

/s/ Venus Y Springs
Venus Y. Springs, *Pro Hac Vice*
Springs Law Firm PLLC
228 Park Ave, S.
New York, NY 10003-1502
Tel: 704-241-9995
vsprings@springslawfirm.com

/s/ Christina L Henry
Christina L Henry, WSBA 31273
SEATTLE CONSUMER JUSTICE
10728 16th Avenue SW
Seattle, WA 98146
Tel: 206-330-0595 / Fax 206-400-7609
chenry@hdm-legal.com

*Attorneys for the Plaintiffs*